

1999 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-30-1999

# United States v. Miller

Precedential or Non-Precedential:

Docket 97-7438

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1999

Recommended Citation
"United States v. Miller" (1999). *1999 Decisions.* Paper 313.
http://digitalcommons.law.villanova.edu/thirdcircuit_1999/313

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1999 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed November 30, 1999

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 97-7438

UNITED STATES OF AMERICA

v.

QUENTIN MILLER, a/k/a "Q"
        Quentin Miller, Appellant

On Appeal From the United States District Court
For the Middle District of Pennsylvania
(D.C. Crim. No. 96-cr-00021)
District Judge: Honorable William W. Caldwell

Argued: September 22, 1999

Before: BECKER, Chief Judge, GARTH, Circuit Judge, and
POLLAK, District Judge.*

(Filed November 30, 1999)

_____

* Honorable Louis H. Pollak, United States District Judge for the Eastern
District of Pennsylvania, sitting by designation.

JAMES V. WADE, ESQUIRE
Federal Public Defender
DANIEL I. SIEGEL, ESQUIRE
  (ARGUED)
Assistant Federal Public Defender
Middle District of Pennsylvania
100 Chestnut Street, Suite 306
Harrisburg, PA 17101

Counsel for Appellant

DAVID M. BARASCH, ESQUIRE
United States Attorney
MARTIN C. CARLSON, ESQUIRE
  (ARGUED)
Assistant United States Attorney
228 Walnut Street
Harrisburg, PA 17108-1754

Counsel for Appellee

OPINION OF THE COURT

BECKER, Chief Judge.

Quentin Miller pled guilty to conspiring to distribute crack cocaine. After this Court reviewed the voluntariness of Miller's plea and affirmed his sentence on direct appeal, he filed two pro se post-conviction motions in the District Court challenging the indictment underlying his conviction. The District Court, acting sua sponte, recharacterized Miller's ineptly drafted motions as a single 28 U.S.C. S 2255 motion and dismissed Miller's claims on their merits.

This kind of recharacterization poses a novel problem of judicial administration. The Antiterrorism Effective Death Penalty Act (AEDPA) bars federal prisoners from attacking their convictions through second or successive habeas corpus petitions except in very limited circumstances. See Pub. L. No. 104-132, Title I, S 105, 110 Stat. 1214, 1220 (1996) (codified at 28 U.S.C.A. S 2255 (West Supp. 1999). Many pro se inmate petitioners are frequent filers of

2

inartfully drafted post-conviction motions. Over the years, district courts have commonly recharacterized such pro se post-conviction motions as S 2255 motions (the statutory means by which federal prisoners attack their sentences on collateral review). This practice developed both for efficiency's sake and out of a sense of fairness to pro se petitioners, whose claims are construed quite liberally. Under the aegis of AEDPA, however, with its sharp limitation on second or successive petitions, if a district court recharacterizes a pro se petitioner's poorly drafted post-conviction motion as a S 2255 petition and dismisses the motion on its merits, the petitioner is effectively barred from later filing a full-fledged collateral attack upon his conviction. Thus, under AEDPA, the practice of liberal recharacterization that once opened the doors of the federal courts to pro se litigants now threatens unintentionally to close them shut.

Following the lead of the Court of Appeals for the Second Circuit, see Adams v. United States, 155 F.3d 582 (2d Cir. 1998), we hold that district courts must first take certain prophylactic measures before recharacterizing a pro se petitioner's post-conviction motion as a S 2255 motion or ruling on a S 2255 motion denominated as such. More specifically, we prescribe that upon receipt of a pro se pleading challenging an inmate's conviction or incarceration--whether styled as a S 2255 motion or not--district courts should issue a form notice to the petitioner regarding the effect of such a pleading in light of AEDPA. This communication should advise the petitioner that he can (1) have his motion ruled upon as filed; (2) have his motion recharacterized as a S 2255 motion and heard as such, but lose his ability to file a second or successive petitions absent certification by the court of appeals; or (3) withdraw his petition and file one all-inclusiveS 2255 petition within the one-year statutory period prescribed by AEDPA in S 2255.

Since the District Court did not give Miller notification of this nature, we will set aside its decision to recharacterize his two post-conviction motions, vacate its order of dismissal, and remand for further proceedings consistent with this opinion.

I.

Miller participated in a conspiracy to transport crack cocaine from Philadelphia to York, Pennsylvania. A grand jury returned a two-count indictment against him: one count for distributing in excess of fifty grams of crack cocaine, 21 U.S.C. S 841(a)(1), (b)(1)(A)(iii), and one count for conspiring to distribute in excess of fifty grams of crack cocaine, 21 U.S.C. S 846. Miller, assisted by counsel, entered into a plea agreement with the government with respect to the conspiracy charge.

Unhappy with the calculation of his sentence in the presentence report, Miller, acting pro se, filed a letter with the District Court in an attempt to withdraw his guilty plea before sentencing. He asserted that his attorney had failed to warn him that he would be treated as a career offender. The District Court declined to hold an evidentiary hearing on this issue and denied Miller's motion to withdraw his plea. Miller appealed to this court, challenging the District Court's refusal to allow him to withdraw his guilty plea, which he claimed was involuntary because uninformed. In a not-for-publication memorandum opinion, we rejected Miller's argument. See United States v. Miller, No. 96-7610 (3d Cir. June 16, 1997).

Shortly after this Court's judgment, Miller, again acting pro se, filed two post-conviction motions with the District Court. The first motion requested the dismissal of the underlying indictment, alleging that the prosecutor knowingly used perjured testimony before the grand jury. The second filing was a motion for a new trial under Fed. R. Crim. P. 33, which was apparently based on the same allegation of perjured testimony. As they were styled, Miller's two motions were untimely. A motion for a new trial and a motion to dismiss an indictment cannot be lodged after the defendant has pled guilty and appealed that conviction. The District Court, therefore, treated Miller's "combined motions" as "really just one motion under 28 U.S.C. S 2255 to vacate the defendant's sentence," and rejected them on their merits. [District Court's 8/20/97 Order at 1, reprinted in Appendix II at 29.]

Miller again sought to appeal. He argued in his Application for a Certificate of Appealability and Brief in

4

Support that the indictment against him was based on perjured testimony and that the District Court lacked jurisdiction to hear his case. More importantly, he also asserted that "the district court construing the motion filed as a S 2255 motion denude[d] appellant of his right to file a S 2255 motion to raise other viable issues that are substantive in his case." [Application for a Certificate of Appealability, filed 9/25/97, at 1, P 4.] He requested,

> if this court fail [sic] to reach the merits of the denial of the motion below, that the court will "REVERSE" the lower court's order construing the motion filed as a S 2255 motion and allow appellant the opportunity to file a proper S 2255 motion as of right to raise the viable issues that he plans to raise outside the scope of the previous motion to dismiss the indictment.

[Id. at 2, P 6.] Miller's appointed appellate counsel filed only an opening brief on his client's behalf. In it, he abandoned Miller's contention that perjured testimony was used against him at the grand jury hearing. Instead, he raised an ineffective-assistance-of-counsel claim, asserting that Miller's counsel prejudiced him in failing to advise him that he would be sentenced as a career offender.

The government makes two arguments in response. First, it contends that Miller's ineffective-assistance-of-counsel argument is time barred. Second, it submits that even if the claim is timely, it has no merit.

II.

A.

The first question before us is whether the District Court properly characterized Miller's two post-conviction motions as 28 U.S.C. S 2255 motions.1 In addressing this question,

_____

1. In its initial brief, the government assumed that the District Court had correctly recharacterized Miller's post-conviction motions as one S 2255 motion.  Miller's counsel's initial briefing on this issue was inadequate.  We instructed both parties to submit letter memoranda addressing the recharacterization issue, which is an important issue of judicial

5

we note at the outset that "federal courts have long recognized that they have an obligation to look behind the label of a motion filed by a pro se inmate and determine whether the motion is, in effect, cognizable under a different remedial statutory framework." United States v. Jordan, 915 F.2d 622, 624–25 (11th Cir. 1990). This obligation stems from the time-honored practice of construing pro se plaintiffs' pleadings liberally. See, e.g., Haines v. Kerner, 404 U.S. 519, 520 (1972) ("[A]llegations such as those asserted by petitioner, however inartfully pleaded, are sufficient to call for the opportunity to offer supporting evidence"); Zilich v. Lucht, 981 F.2d 694, 694 (3d Cir. 1992) ("When . . . plaintiff is a pro se litigant, we have a special obligation to construe his complaint liberally.").

In keeping with these obligations, district courts have "routinely converted post conviction motions of prisoners who unsuccessfully sought relief under some other provision of law into motions made under 28 U.S.C.S 2255 and proceeded to determine whether the prisoner was entitled to relief under that statute." Adams v. United States, 155 F.3d 582, 583 (2d Cir. 1998).2 Courts engaged in this practice in order to reach the merits of pro se petitions, while avoiding the wasted time and expense of forcing petitioners to redraft their pleadings. Several courts of appeals, including this one, have endorsed this approach as fair and efficient. See, e.g., Tedford v. Hepting, 990 F.2d

_____

administration and public interest in light of AEDPA, and they have argued their respective positions effectively. Thus, we can properly reach the issue. See Hatley v. Lockhart, 990 F.2d 1070, 1073 (8th Cir. 1993) ("we have discretion to consider issues not raised in the briefs, `particularly where substantial public interests are involved' ") (citation omitted); see also United States v. Babwah, 972 F.2d 30, 35 (2d Cir. 1992) (finding it appropriate to reach an issue not raised by defendant's counsel on appeal, in part because the government was afforded an opportunity to argue the issue and would not be prejudiced by the court's decision to reach it).

2. Section 2255 provides those convicted in federal courts with a means by which to bring collateral attacks challenging the validity of their judgment and sentence. See 28 U.S.C. S 2255. The section "was intended to afford federal prisoners a remedy identical in scope to federal habeas corpus." Davis v. United States, 417 U.S. 333, 343 (1974).

745, 749-50 (3d Cir. 1993) (treating S 1983 claim as petition for writ of habeas corpus when validity of plaintiff's criminal conviction was necessarily at issue); United States v. Jordan, 915 F.2d 622, 625 (11th Cir. 1990) (recharacterizing Rule 35 motion as S 2255 motion).

The District Court's recharacterization of Miller's two post-conviction motions comports with the above-mentioned practices. Miller alleged that he discovered new evidence of perjured grand jury testimony that undermined both his conviction and the indictment against him. As do many pro se petitioners, however, Miller failed to state these claims in a manner consistent with the federal rules of criminal and appellate procedure. Miller's FED. R. CRIM. P. 33 motion for a new trial based on the evidence of perjured testimony was procedurally barred.[3] And his attempt to "nullify" his conviction by filing his "Motion to Dismiss the Underlying Indictment" suffered from similar procedural defects; there is no general right, other than on collateral attack, to challenge a conviction or indictment after the defendant pleads guilty. See Tedford v. Hepting, 990 F.2d 745, 748 (3d Cir. 1993) (noting that it is "clear that if a prisoner challenges `the fact or length of confinement,' then his sole federal remedy is a writ of habeas corpus, SS 28 U.S.C. 2254, 2255").

B.

Had AEDPA not been enacted, the District Court's handling of Miller's motions in this case would pose no problem. AEDPA, however, dramatically altered the form and timing of habeas petitions filed in the federal courts.

_____

3. "By its express terms, Rule 33 is confined to those situations in which a trial has been had." United States v. Graciani, 61 F.3d 70, 78 (1st Cir. 1995). In this case, Miller pled guilty to the conspiracy to distribute cocaine charge. He thus waived his right to a trial and his right to petition for a new trial. See id. ("A defendant who enters a guilty plea cannot thereafter use Rule 33 as a wedge to undo his acknowledgment that he committed the offense.") (citing United States v. Collins, 898 F.2d 103, 104 (9th Cir. 1989) (per curiam); United States v. Lambert, 603 F.2d 808, 809 (10th Cir. 1979); Williams v. United States, 290 F.2d 217, 218 (5th Cir. 1961) (per curiam)).

Section 2255, as amended by AEDPA, bars second or successive habeas petitions absent exceptional circumstances and certification by the appropriate court of appeals. See Pub. L. 104-132, Title I, S 105, 110 Stat. 1220 (1996) (codified at 28 U.S.C.A. S 2255 (West Supp. 1999)). Amended sections 2255 and 2244(d)(1), moreover, impose a one-year statute of limitation on applications for writ of habeas corpus. See id.; see also Pub. L. 104-132, Title I, S 101, 106 Stat. 1217, 1220 (1996) (codified at 28 U.S.C.A. S 2244(d)(1) (West Supp. 1999)). Habeas petitioners must therefore be careful to avoid the twin procedural bars that AEDPA has created. To avoid making successive claims, petitioners must marshal in one S 2255 writ all the arguments they have to collaterally attack their convictions. And in order to avoid being time barred, they must take care to file this one all-inclusive petition within one year of the date on which the judgment of conviction becomes final. Cf. infra note 9 (describing the date on which Miller's judgment of conviction became final).

With AEDPA in place, the practice of liberally construing post-conviction motions as S 2255 petitions can, in the absence of cautionary or educational measures, impair the ability of inmates to challenge their convictions on collateral review. If each pro se post-conviction filing is treated as a S 2255 writ, as was once the case, inept petitioners face losing potentially valid constitutional claims at the hands of judges who are applying a rule of liberal construction that was created to benefit pro se claimants. This odd result has not gone unnoticed by federal courts. The Court of Appeals for the Second Circuit recently addressed this post-AEDPA anomaly in Adams v. United States, 155 F.3d 582 (2d Cir. 1998) (per curiam).

Adams, an inmate acting pro se, had filed a post-conviction Rule 12(b)(2) Motion to Dismiss, which the district court unilaterally recharacterized as aS 2255 motion. See id. at 582-83. Adams objected to this reconstruction and asked to withdraw the motion rather than have it so recharacterized because he intended to file "all his habeas claims in a single later [S 2255] motion." Id. at 583. The district court refused this request and

8

dismissed Adams's claim on its merits. See id. On review, the court of appeals held that the common practice of automatically treating post-conviction motions as S 2255 motions should be abandoned. The court wrote, "The [district] court's act of conversion which we approved of under pre-AEDPA law because it was useful and harmless might, under AEDPA's new law, become extraordinarily harmful to prisoner's rights." Id. at 583-84. "A prisoner convicted pursuant to unconstitutional proceedings," the court continued, "might lose the right to have a single petition for habeas corpus adjudicated, solely by reason of a district court's having incorrectly recharacterized some prior motion as one brought under S 2255." Id. at 584.

To avoid this unfairness, and consistent with the above-mentioned practices of assisting pro se petitioners, the court concluded that district courts must apprise petitioners of the consequences of their petitions before the district court can make a S 2255 recharacterization. See id. at 583-84. The court articulated the means by which a district court would give a pro se petitioner such notice:

> [D]istrict courts should not recharacterize a motion purportedly made under some other rule as a motion made under S 2255 unless (a) the movant, with knowledge of the potential adverse consequences of such recharacterization, agrees to have the motion so recharacterized, or (b) the court finds that, notwithstanding its designation, the motion should be considered as made under S 2255 because of the nature of the relief sought, and offers the movant the opportunity to withdraw the motion rather than have it so recharacterized.

Id. at 584 (emphasis added).

Not finding either of these two preconditions met in Adams's case, the court of appeals vacated the district court's decision to treat Adams's Rule 12(b)(2) motion as a S 2255 motion. See id. at 582-84. The court reasoned that the district court neither had "obtained Adams's informed consent" to deem his post-conviction motion aS 2255 motion, nor had it given Adams the opportunity to withdraw the motion rather than have it so recharacterized.

9

Id. at 584. The court held that Adams should be given the opportunity to file a S 2255 motion. Given that Adams would have had several months under AEDPA's one-year statute of limitation to file his S 2255 motion when the district court entered its order, the court further held that the statute of limitations would be tolled, as "fairness demands," in order to "afford Adams an opportunity to file his first S 2255 motion, provided that he do so promptly." Id. at 584 n.2. In so holding, the court counseled that future district courts giving the Adams admonitions must be sensitive to the one-year statute of limitations for habeas petitions. See id.

Were the Adams test to apply here, the same result would obtain. The District Court dismissed Miller's two petitions without asking the government to submit a response and without holding a hearing at which Miller was present. Thus, without the benefit of Adams 's two-part notice requirement, Miller had neither the opportunity to "agree" or "disagree" that his pro se motions be recharacterized as a single S 2255 motion, see id. at 584, nor the "opportunity to withdraw the motion rather than have it so recharacterized." Adams, 155 F.3d at 584.4 As these options were not presented to Miller, Adams would demand vacating and remanding the case to allow Miller to file what he intended as his original and completeS 2255 motion.

Only one other court of appeals appears to have addressed the post-AEDPA claim recharacterization issue raised by Adams.5 The Court of Appeals for the Fifth

_____

4. Courts in the Second Circuit have begun giving inmates, acting pro se, such notice. See., e.g., United States v. Moore, 1999 WL 377258, *1 (2d Cir. June 1, 1999) (referring to petitioner's "options" in the " `Adams inquiry' "); Warren v. Garvin, No. 97-C3242, 1999 WL 494117, at *5 n.6 (S.D.N.Y. July 13, 1999) (discussing the "Adams admonition").

5. We note that a district court in our circuit purported to follow the Adams rule, but seems to have misapplied it. See United States v. Hawkins, No. CRIM. A. 93-221-01, 1998 WL 804729, at *6 (E.D. Pa. Nov. 19, 1998). In Hawkins, the district court recharacterized Hawkins's post-conviction petition as a S 2255 motion and, citing Adams, recognized the problems in doing so in light of AEDPA. See id. at *6-7. However, after saying as much, the district court failed to "offer" Hawkins the "opportunity to withdraw [his] motion rather than have it so recharacterized," as Adams requires. Adams, 155 F.3d at 584.

Circuit, albeit uncritically, seems to have taken the opposite approach to the problem. In In re Tolliver, 97 F.3d 89 (5th Cir. 1996) (per curiam), petitioner requested that the court of appeals issue an order authorizing him to file a successive S 2255 claim. The court endorsed the district court's unilateral decision to recharacterize Tolliver's previous pro se motion as a S 2255 motion and held that, since Tolliver had filed such a motion, any successive S 2255 motion he filed needed to be certified by a court of appeals. In reaching this holding, the court said nothing about the fairness concerns raised in Adams regarding such unilateral recharacterizations or AEDPA's impact on the general practice of construing pro se petitioners' pleading liberally.

The Fifth Circuit's opinion in Tolliver is so brief and without elaboration that it is hard to use it as a foil to challenge the result in Adams. To be fair to our sister court, Tolliver was decided two years before Adams and almost immediately after AEDPA's enactment. The Fifth Circuit did not have the benefit of Adams's discussion, and it does not appear that the Adams argument was raised. Faced directly with this argument, the Tolliver court might have decided otherwise, or at the very least explained away the fairness concerns discussed at length in Adams.

At all events, we find Adams persuasive. First, we recognize that the practice of recharacterizing pro se post-conviction motions as S 2255 motions developed, in part, as an attempt to be fair to habeas petitioners. See Adams, 155 F.3d at 583–84; see also Section II.A, supra.6 The line of

_____

6. A good example of this practice is a case from the Court of Appeals for the Tenth Circuit, decided before the enactment of AEDPA, which recognized the fairness concerns at issue in deciding whether or not to recharacterize pro se post-conviction pleadings. In United States v. Warner, 23 F.3d 287, 291 (10th Cir. 1994), the court declined to construe petitioner's Rule 32 motion as a S 2255 motion because the petitioner did not intend the motion to be so construed, and more importantly, "because if it was so construed," a "latter petition raising new issues attacking the sentence would be subject to challenge as successive." The court's attention to the rule that pro se pleadings be construed in the pro se petitioner's favor, see id. at 290, compelled it to

11

pro-se-petitioner-friendly cases endorsing liberal recharacterizations should not be applied woodenly in such a way as to deprive habeas petitioners of their only opportunity to seek collateral relief. Second, the Adams approach seems legitimately to advance Congress's purposes in enacting AEDPA in a way that the Tolliver approach does not. AEDPA was intended to codify the judicial doctrine of abuse of writ. See Felkner v. Turpin, 518 U.S. 651, 664 (1996). This codified abuse of writ rule does not suspend the writ of habeas corpus. See id. at 661-64. Rather, it effectively creates a "modified res judicata rule," which prevents petitioners from relitigating habeas claims absent exceptional circumstances. See id. at 664; id. at 657 (describing the court of appeals "gatekeeping" role in the certification of successive claims process). The Adams approach comports with AEDPA's gatekeeping mechanisms by forcing federal inmates to litigate all of their collateral claims in one S 2555 hearing--either at the time the motion is first filed or when it is first refiled after the Adams notice and within the statutory time limit.

Under the Tolliver approach, district courts would be free to construe unilaterally a petitioner's first post-conviction pleading as his S 2255 writ, effectively barring all future writs except in the rare circumstances set out inS 2255. Although Tolliver similarly forces the habeas action into one hearing, this one all-important hearing would often be meaningless because the petitioner would not have set forth all his potentially valid constitutional claims. Put differently, the Tolliver rule can act as a trap for unwary petitioners who do not know that a single post-conviction motion might bar an intended habeas writ. This result is contrary to the notion that AEDPA's "modified res judicata rule" and "gatekeeping" mechanism are directed toward

_____

avoid a S 2255 recharacterization that only potentially would have barred a successive appeal under the pre-AEDPA incarnation of S 2255. To make such a recharacterization when doing so virtually guarantees that a successive petition would be barred, see Tolliver, 97 F.3d at 90 (denying Tolliver's motion for certification of appealability under the new AEDPA appealability standard), seems contrary to the practice of liberal construction.

12

"screening" previously litigated issues, see Felkner, 518 U.S. at 662, 664, not toward foreclosing a petitioner's ability to raise all potential arguments in a single claim.

Persuaded by the Adams approach, we conclude that district courts should discontinue their practice of automatically treating pro se, post-conviction motions as S 2255 petitions. Rather, upon receipt of pro se pleadings challenging an inmate's conviction or incarceration--whether styled as a S 2255 motion or not--a district court should issue a notice to the petitioner regarding the effect of his pleadings. This notice should advise the petitioner that he can (1) have his motion ruled upon as filed; (2) have his motion recharacterized as a S 2255 motion and heard as such, but lose his ability to file successive petitions absent certification by the court of appeals; or (3) withdraw the petition, and file one all-inclusive S 2255 petition within the one-year statutory period. We strongly suggest that the District Court provide, in its notice, that the prose petitioner has 45 days from the date of the notice to provide the District Court with a response.7

The rule we announce is prospective (and also narrow). For example, a pro se petitioner who filed a pre-AEDPA pleading, which was recast as a S 2255 motion, is bound by

_____

7. We anticipate that in some cases the petitioner will fail to respond at all to this form notice or fail to respond within the prescribed time. In such instances, the District Court should rule on the pleadings before it, as captioned.

We also observe that the same problem may arise in connection with a filing by a pro se state petitioner. Although the issue is not before us, we observe that a district court might see fit to take similar prophylactic steps before recharacterizing such a filing as a petition for habeas corpus under 28 U.S.C. S 2254, because, under AEDPA, state prisoners face similar restrictions on filing second or successive petitions. Cf. Copus v. City of Edgerton, 96 F.3d 1038 (7th Cir. 1996) (per curiam) ("The district court [is] not authorized to convert a S 1983 action into a S 2254 action, a step that carries disadvantages (exhaustion and the certificate of appealability only two among many) for litigants . . . . When a plaintiff files a S 1983 action that cannot be resolved without inquiring into the validity of confinement, the court should dismiss the suit without prejudice.").

the provisions of AEDPA regarding second or successive petitions. Our holdings in In re Minarik, 166 F.3d 591 (3d Cir. 1999), and United States v. Roberson,__ F.3d __, No. 97-7309, 1999 WL 825544 (3d Cir. Oct. 14, 1999), which require examination of pre-AEDPA abuse of writ principles in such circumstances, offer petitioners sufficient protection against unconstitutional retroactive application of the AEDPA standards.

C.

Because the District Court in this case unilaterally recharacterized Miller's post-conviction motions as a S 2255 motion despite Miller's subsequent objection, we will vacate the Court's order and remand the case so that Miller may make all of his collateral arguments in a singleS 2255 motion.8 AEDPA's one-year statute of limitations would normally bar the filing of a S 2255 petition at this late date, some two years after the judgment of conviction became final on September 14, 1997.9 However, as Miller filed his FED. R. CRIM. P. 33 motion and motion to dismiss on August 11, 1997--more than a month before the statute even began to run on September 14, 1997--he would have had more than ample time to withdraw those motions, recast them, and include them with other arguments in a timely S 2255 motion. Therefore, as in Adams, we will toll the statute of limitations to afford Miller his opportunity to

_____

8. We do not speculate what these claims might be, pass on their merits, or render judgment on the ones that Miller and his counsel advanced in the present appeal.

9. The statute began to run in Miller's case on the date "judgment of conviction bec[ame] final." 28 U.S.C.A. S 2255. This Court rejected Miller's direct appeal on June 16, 1997. See United States v. Miller, No. 96-7610 (3d Cir. June 16, 1997). As Miller did notfile a petition for writ of certiorari with the Supreme Court, judgment became final and the one-year statute of limitations began to run on the date on which Miller's "time for filing a timely petition for certiorari review expire[d]." Kapral v.
United States, 166 F.3d 565, 577 (3d Cir. 1999). Supreme Court Rule 13 provides that a timely petition for certiorari review must be filed within ninety days after the entry of judgment by a United States court of appeals. Here, that would be ninety days after June 16, 1997, or September 14, 1997.

14

refile his habeas petition. See Adams, 155 F.3d at 584 n.2. He should do so within 120 days or be barred from reconsideration.

The government argues that permitting such a petition at this late date would run afoul of our recent decision in United States v Duffus, 174 F.3d 333, 337 (3d Cir. 1999), cert. denied, 1999 WL 426458 (U.S. Oct. 4, 1999) (refusing, in light of AEDPA, to allow an amendment to a S 2255 petition after the S 2255 one-year statute of limitations had run, when the proposed amendment raised a new claim arising out of a different set of facts and the facts supporting the claim were available to the petitioner at the time of his original filing). This case is simply different in kind. In Duffus, the petitioner styled his original complaint as a S 2255 motion and then tried more than a year later to amend it to include additional claims. No unilateral act on the part of the district court prevented Duffus from raising all of his S 2255 claims in a timely manner. Therefore, he was responsible for not raising all the arguments he had to make in his original S 2255 petition and was rightly barred by S 2255's one-year statute of limitations.

Here, Miller seeks to file his original S 2255 complaint, making all of his collateral claims at once, but the District Court's sua sponte decision to recharacterize his post-conviction motions has precluded him from doing so. Unlike the petitioner in Duffus, Miller wanted to and would have raised all of his S 2255 arguments in a timely fashion, but for the District Court's intervention. Miller is not attempting, like the petitioner in Duffus, to amend a long-ago filed S 2255 motion; he is trying tofile his initial petition. Therefore, he is not making an end run around S 2255's one-year statute of limitation--as would have the petitioner Duffus if allowed to amend his complaint--and we do not need to bar his claim to protect the integrity of Congress's decision to enact S 2255. See id. at 337-38.

For similar reasons, our decision to toll the statute of limitations to afford Miller the opportunity tofile his S 2255 petition comports with our recent decision in Jones v. Morton, __ F.3d __, No. 98-5230, 1999 WL 970797 (3d Cir. Oct. 25, 1999). In Jones, we refused to equitably toll

15

AEDPA's one-year statute of limitations when the petitioner made no showing of unfairness, e.g., that he diligently pursued his claims and that he was prevented, in some extraordinary way, from asserting his rights. See id. at *5-6. Here, Miller immediately protested the District Court's decision to recharacterize his post-conviction motions as a S 2255 motion, and it was the District Court's unilateral act that prevented Miller from filing his intendedS 2255 motion in a timely fashion. To quote Jones, Miller's appeal is one of the " `rare situations where equitable tolling is demanded by sound legal principles as well as the interests of justice.' " Id. at *5 (citations omitted). If in the future, a district court failed to provide the necessary warnings proscribed in this opinion, the statute of limitations should similarly be tolled to allow the petitioner an opportunity to file all of his claims in the correct manner.

For the foregoing reasons, the order of the District Court will be vacated and the case remanded for further proceedings consistent with this opinion.

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit

16