[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JANUARY 02, 2002
THOMAS K. KAHN
CLERK

_____

No. 01-12181

_____

D. C. Docket No. 97-00097-CV-4

HERNAN O'RYAN CASTRO,

Petitioner-Appellant,

versus

UNITED STATES OF AMERICA,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Georgia

_____

**(January 2, 2002)**

Before WILSON, RONEY and FAY, Circuit Judges.

WILSON, Circuit Judge:

Hernan O'Ryan Castro appeals the district court's dismissal of his habeas corpus petition, which was filed pursuant to 28 U.S.C § 2255. The district court concluded that the petition was successive under § 2255, as amended by the 1996 Antiterrorism and Effective Death Penalty Act (AEDPA), and thus not entitled to

consideration. The dismissal of O'Ryan Castro's petition raises an issue of first impression in this Circuit: when a district court recharacterizes a federal prisoner's postconviction motion as a petition under § 2255, does that render the prisoner's subsequent attempt to file a § 2255 petition a "second or successive petition" within the purview of AEDPA amendments? Finding some of the opinions of our sister circuits who have considered this issue to be persuasive, we hold that O'Ryan Castro's subsequent § 2255 petition cannot be deemed successive.

## I. BACKGROUND

In 1992, O'Ryan Castro was convicted and sentenced to twenty years of imprisonment for conspiracy to possess with the intent to distribute cocaine in violation of 21 U.S.C. § 846, possession with the intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1), and conspiracy to import cocaine in violation of 21 U.S.C. § 963. We affirmed the convictions and sentence on March 24, 1994. On July 11, 1994, O'Ryan Castro filed a pro se Motion For New Trial pursuant to Federal Rule of Criminal Procedure 33 based upon newly discovered evidence. The evidence consisted of proof that a witness, who testified against him at trial, had entered into an immunity agreement with the government. The government submitted a response in which it stated that it did not object to the motion as

demanding relief under both Rule 33 and § 2255. O'Ryan Castro then filed a pro se reply in which he explained that he had filed his motion properly under Rule 33. The district court treated O'Ryan Castro's motion as requesting relief pursuant to both Rule 33 and § 2255 and denied it on October 28, 1994. We affirmed the district court's ruling.

On April 22, 1997, O'Ryan Castro filed his first self-styled § 2255 habeas petition, alleging, among other things, that he failed to receive effective assistance of counsel in violation of the Sixth Amendment. The district court denied this petition and O'Ryan Castro appealed. After granting a certificate of appealability on the ineffective assistance claim, we vacated the order denying his petition and remanded the matter for further evidentiary determinations. We also instructed the district court to examine the record to determine whether O'Ryan Castro's petition was successive. The district court concluded that the petition was successive and dismissed it due to his failure to meet the particular requirements imposed by the amendments to § 2255 regarding successive petitions.

## II. STANDARD OF REVIEW

"We review de novo a district court's denial of habeas corpus relief." *Dorsey v. Chapman*, 262 F.3d 1181, 1185 (11th Cir. 2001). "A district court's factual findings in a habeas corpus proceeding are reviewed for clear error." *Id.*

## III.  DISCUSSION

Due to the frequency in which pro se litigants draft incognizable motions, "[f]ederal courts have long recognized that they have an obligation to look behind the label of a motion filed by a *pro se* inmate and determine whether the motion is, in effect, cognizable under a different remedial statutory framework." *United States v. Jordan*, 915 F.2d 622, 624–25 (11th Cir. 1990).  This accommodation was the result of the time-honored practice of construing pro se plaintiffs' pleadings liberally.  *See Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam).  In accordance with this practice, "district courts routinely convert postconviction motions of prisoners who unsuccessfully seek relief under some other provision of law into motions made under . . . § 2255 and proceeded to determine whether the prisoner was entitled to relief under that statute." *Adams v. United States*, 155 F.3d 582, 583 (2d Cir. 1998) (per curiam).  These conversions were justified because they were harmless and they also assisted prisoner-movants in dealing with legal technicalities that might otherwise preclude prompt adjudication of their claims. *Id*.  "Several courts of appeals . . . have endorsed this approach as fair and efficient." *United States v. Miller*, 197 F.3d 644, 648 (3d Cir. 1999).

On April 24, 1996, however, the AEDPA took effect and significantly altered the innocuousness of liberally recharacterizing a petitioner's postconviction

4

motion.  The AEDPA, which amended § 2255, bars federal prisoners from attacking their convictions through successive habeas corpus petitions except in very limited circumstances.[1]  Specifically, successive applications may be heard only after an appellate court certifies the petition, because it contains "(1) newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense; or (2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable."  28 U.S.C. § 2255.  "If a district court receiving a motion under some other provision of law elects to treat it as a motion under § 2255 and then denies it, that may cause the movant's subsequent filing of a motion under § 2255 to be barred as" successive.  *Adams*, 155 F.3d at 583.  Consequently, a "court's act of conversion which we approved under pre-AEDPA law because it was useful and harmless might, under AEDPA's new law, become extraordinarily harmful to a prisoner's rights."  *Id*. at 583–84.

---

[1]"A 'successive petition' raises grounds identical to those raised and rejected on the merits on a prior petition."  *Kuhlmann v. Wilson*, 477 U.S. 436, 444 n.6 (1986).  A petitioner abuses the writ when he "files a petition raising grounds that were available but not relied upon in a prior petition."  *Id*.

O'Ryan Castro filed his initial Rule 33 motion[2] prior to the enactment of the AEDPA and his subsequent § 2255 petition after the AEDPA became effective. Despite the fact that O'Ryan Castro filed his Rule 33 motion before the AEDPA's effective date, it nonetheless has the capacity to trigger the procedural strictures that the AEDPA attaches to successive habeas petitions. *See Raineri v. United States*, 233 F.3d 96, 99 (1st Cir. 2000). This raises the question of whether the district court properly considered O'Ryan Castro's Rule 33 motion as his first § 2255 petition, making his subsequent § 2255 petition successive.

Several circuits have prescribed specific guidelines for construing a claimant's self-styled § 2255 petition when a district court has recharacterized a claimant's prior postconviction motion as a § 2255 petition. The First Circuit, in particular, decided a case that is strikingly similar to the present case. The petitioner in *Raineri*, like O'Ryan Castro, brought a "Motion for Correction of Sentence and/or New Trial" pursuant to Federal Rule of Criminal Procedure 35 and/or Rule 33 prior to the AEDPA's effective date. *Id*. at 98. The district court, acting sua sponte, found Rules 33 and 35 inapplicable and recharacterized the motion as an application for relief under § 2255. *Id*. The petitioner submitted a subsequent motion styled as a § 2255 petition that the district court deemed

---

[2]The district court converted this motion into a § 2255 petition.

6

successive and thus dismissed for his failure to obtain the requisite authorization to proceed with a successive petition. *Id*. at 99. In reversing this dismissal, the First Circuit concluded that "because the court acted sua sponte and without any advance notice to the petitioner, [it could not] treat the earlier pleading as a 'first' habeas petition for AEDPA purposes." *Id*. at 100-01. In reaching this decision, the First Circuit, persuaded by holdings of the Second and Third Circuits in prior cases, gave due consideration to the importance of protecting a claimant's right to habeas review. *Id*. at 99–101.

Two years before the First Circuit decided *Raineri*, the Second Circuit held,

> At least until it is decided whether such a conversion or recharacterization can affect the movant's right to bring a future habeas petition, district courts should not recharacterize a motion purportedly made under some other rule as a motion made under § 2255 unless (a) the movant, with knowledge of the potential adverse consequences of such recharacterization, agrees to have the motion so recharacterized, or (b) the court finds that, notwithstanding its designation, the motion should be considered as made under § 2255 because of the nature of the relief sought, and offers the movant the opportunity to withdraw the motion rather than have it so recharacterized.

*Adams*, 155 F.3d at 584. Similarly, the Third Circuit, "conclude[d] that district courts should discontinue their practice of automatically treating pro se, postconviction motions as § 2255 petitions." *United States v. Miller*, 197 F.3d

7

644, 652 (3d Cir. 1999).  The Third Circuit, however, went a step further than the

procedure announced by the Second Circuit, stating that

> upon receipt of pro se pleadings challenging an inmate's conviction
> or incarceration--whether styled as a § 2255 motion or not--a district
> court should issue a notice to the petitioner regarding the effect of
> his pleadings. This notice should advise the petitioner that he can
> (1) have his motion ruled upon as filed; (2) if his motion is not
> styled as a § 2255 motion have his motion recharacterized as a § 2255
> motion and heard as such, but lose his ability to file successive petitions
> absent certification by the court of appeals; or (3) withdraw the motion,
> and file one all-inclusive § 2255 petition within the one-year statutory
> period.

*Id*.  It also held that this rule was narrow and would apply prospectively – meaning

that "a pro se petitioner who filed a pre-AEDPA pleading, which was recast as a §

2255 motion, is bound by the existing provisions of AEDPA regarding successive

second or successive petitions." *Id*.[3]

In addition to the First Circuit, the Seventh, Ninth, and Tenth Circuits have

adopted the views expressed by the Second and Third Circuits.  *See Henderson v.*

*United States*, 264 F.3d 709, 711 (7th Cir. 2001) (holding that a court should not

deem a Rule 33 or other mislabeled motion a § 2255 motion "unless the movant

has been warned about the consequences of his mistake"); *United States v. Kelly*,

235 F.3d 1238, 1242 (10th Cir. 2000) ("[w]e hold that district courts should use the

---

[3]We should note that the petitioners in both *Adams* and *Miller* filed their initial
postconviction motions after the effective date of the AEDPA.  *Adams*, 155 F.3d at 582–83;
*Miller*, 197 F.3d 652–53.

procedure adopted in *Adams* for dealing with pro se postconviction motions not expressly made under § 2255 . . . ."); *United States v. Seesing*, 234 F.3d 456, 464 (9th Cir. 2000) (adopting the procedure set forth in *Adams* to address circumstances where a court is presented with a pro se motion that could be recharacterized as a § 2255 motion).

Only one circuit has taken an opposite approach on this issue. In *In re Tolliver*, 97 F.3d 89, 90 (5th Cir. 1996) (per curiam), which was the first case to address this issue, the Fifth Circuit upheld the district court's unilateral recharacterization of the petitioner's previous pro se motion as a § 2255 motion and held that, because the petitioner had filed such a motion, any subsequent § 2255 motion he filed required certification by a court of appeals. The court also determined that despite the petitioner's objection to the district court's conversion of his initial postconviction motion, the motion was incapable of being construed as anything other than a § 2255 motion. *Id.* In discussing *Tolliver*, the Third Circuit noted that the case "was decided two years before *Adams* and almost immediately after AEDPA's enactment." *Miller*, 197 F.3d at 651. It opined that the Fifth Circuit may have decided the case differently if it had the benefit of the Second Circuit's discussion. *Id.* We find this assertion remarkably plausible,

because we certainly are persuaded by the courts that have discussed this issue since *Tolliver*.

Unlike the petitioner in *Tolliver*, O'Ryan Castro's Rule 33 motion for a new trial asserted a cognizable ground for relief. The motion was based upon alleged new evidence, which Rule 33 explicitly provides as a basis for bringing such a motion. *See United States v. Kersey*, 130 F.3d 1463, 1465 n.2 (11th Cir. 1997). In response to the government's motion, the district court considered the motion as requesting relief under both Rule 33 and § 2255. Thus, also unlike *Adams*, *Miller*, and *Raineri*, the district court acted on the government's motion, and not sua sponte. This, however, is a distinction without a difference. The more critical factor is whether O'Ryan Castro knew the consequences of the district court's actions; and much the same as the litigants in *Adams*, *Miller*, *Henderson*, and *Raineri*, there was no protocol in place to ensure that O'Ryan Castro had such knowledge. Because O'Ryan Castro filed his initial postconviction motion pre-AEDPA, it is inconceivable that he, or any pro se litigant during that time, could have foreseen the ultimate consequences of a district court's recharacterization (sua sponte or upon the government's motion) of his postconviction motion. When the district court recharacterized his Rule 33 motion, O'Ryan Castro made the effort to reply in a manner that reaffirmed his intent to move for a new trial under that rule

rather than seek habeas relief. It is therefore probable, not just possible, to conclude that he would have mounted a much stronger campaign to defeat the district court's recasting of his Rule 33 motion if he was aware that his subsequent § 2255 petition would face nearly insurmountable scrutiny.

In sum, we join the majority of circuits that have addressed this issue. Whether a petitioner's initial postconviction motion was filed before or after the AEDPA's effective date or whether the district court's recharacterization of that motion was sua sponte or upon the government's motion, a district court's recharacterization of a petitioner's initial postconviction motion will not be considered a "first" habeas petition for AEDPA purposes unless the petitioner is given notice of the consequences of such recharacterization. Requiring a district court to ensure that a petitioner realizes the ramifications of a court's decision to convert his postconviction motion is an appropriate means of apprizing all defendants of the circumstances that may impair or preserve their right to habeas review. We do not endeavor to burden the district courts with onerous disclosure requirements. As long as a petitioner is not blindsided by having to meet the new criteria in § 2255 for successive petitions, the district court's obligation is satisfied.

## IV. CONCLUSION

11

The district court's dismissal of O'Ryan Castro's § 2255 petition is hereby

VACATED.  We find that O'Ryan Castro's § 2255 petition is not successive and

REMAND this case to the district court to consider the merits of his petition.

**VACATED** and **REMANDED**.