BARKETT, Circuit Judge,
dissenting:
Respectfully, I must dissent because I believe that denying relief in this extraordinary case undermines the concept of equity that the doctrine of tolling was intended to address. Outler’s petition was made untimely by an undisputed error of the court, which Outler has protested on appeal for more than a decade. The purpose of equitable tolling is to allow diligent petitioners to have their claims heard in cases where those claims were made untimely by extraordinary circumstances beyond the *1286 petitioners’ control. This is one of those cases.
Petitioners whose claims would ordinarily be barred by a statute of limitations are entitled to equitable tolling when their filing was made untimely by (1) extraordinary circumstances that were (2) unavoidable even with diligence. Steed v. Head, 219 F.3d 1298, 1300 (11th Cir.2000) (quotation omitted). The majority finds that Outler has failed to satisfy the first prong of this test. I believe that he has satisfied both.

I. Extraordinary Circumstances

The extraordinary circumstance Outler points to is not, as the majority supposes, “the change of law effected by Castro,’’ Maj. Op. at 1281 (citing Castro v. United States, 540 U.S. 375, 124 S.Ct. 786, 157 L.Ed.2d 778 (2003)), but rather the improper, sua sponte recharacterization of his petition by the district court, which is what prevented him from timely asserting all of his § 2255 claims. That improper recharacterization was an extraordinary circumstance, “beyond his control,” Drew v. Dep’t of Corr., 297 F.3d 1278, 1286-87 (11th Cir.2002), which caused his filing to be untimely. See United States v. Miller, 197 F.3d 644, 653 (3d Cir.1999) (holding that it was the “District Court’s unilateral act [of recharacterization] that prevented [petitioner] from filing his intended § 2255 motion in a timely fashion.”). The majority thus analyzes the wrong circumstances, and then denies equitable holding based on its misguided inquiry. See Maj. Op. at 1281.
This Circuit has repeatedly recognized that improper court action, like the actions of government officials, may provide the basis for equitable tolling. Lawrence v. Florida, 421 F.3d 1221, 1226 (11th Cir.2005), aff'd on other grounds — U.S. -, 127 S.Ct. 1079, — L.Ed.2d - (2007) (“extraordinary circumstances” include “when the State’s conduct prevents the petitioner from timely filing”); Knight v. Schofield, 292 F.3d 709, 712 (11th Cir.2002) (granting equitable tolling where petitioner was misled by the clerk of court). Of course, not every state action is “extraordinary,” but where the action is legally deficient — as the recharacterization here was — and directly prevents a petitioner from timely filing his claims — as the re-characterization here did — it is “extraordinary” in the sense necessary to qualify the petitioner for equitable tolling.
Our recent opinion in Spottsville v. Terry, 476 F.3d 1241 (11th Cir.2007), is instructive. In Spottsville, we granted equitable tolling to a petitioner who was misled by the state habeas court into filing his notice of appeal and application for a certificate of probable cause with the wrong court. Id. at 1245. His petition was thus not timely received by the proper court. We held that:
It is unreasonable to expect a pro se litigant to second-guess or disregard an instruction in a written order of a court .... Because Spottsville relied on the misleading instructions of the Superior Court of Tattnell County, equity requires that Spottsville’s limitations period be tolled during the pendency of his attempting appeal of the denial of his state habeas petition.
Id. at 1246. As in Spottsville, the unilateral action of the court here undoubtedly caused the untimeliness of the filing. But the court’s recharacterization of Outler’s petition was more than “misleading” — it was simply wrong. Outler, acting pro se, contested that legally significant recharac-terization in his initial appeal and for years thereafter, despite the fact that Eleventh Circuit law was not in his favor. The Supreme Court’s 2003 decision in Castro— which the Court made retroactive and which we have already found applicable in *1287 Outler’s case, Outler v. United States, 129 Fed.Appx. 553 (11th Cir.2005)—showed that Outler was right all along about the impermissible recharacterization of his petition. Since a “misleading” court instruction that leads to an untimely filing can serve as the basis for equitable tolling, a court error barring a timely filing should do as well.[1]
The majority finds that “because the prior panel applied the Castro holding retroactively, the adverse consequences of the recharacterization contemplated by Castro have been eliminated.” Maj. Op. at 1279. This very case belies that argument. The untimeliness of Outler’s petition — like the successiveness that Castro specifically addressed[2] — is one of the “adverse consequences of the recharacterization.” I have no problem concluding that a court’s improper, sua sponte recharacterization of a petitioner’s filing is an “extraordinary circumstance,” where that recharacterization subjects the petitioner to a successiveness bar he never should have faced and thus causes his filing to be untimely.

II. Diligence

Moreover, on this record, there is no question that Outler was extremely diligent. He has pursued near-constant litigation ever since his Rule 33 motion was improperly recharacterized as a § 2255 petition in December 1995, a recharacterization that he challenged in his initial appeal. He pursued that argument despite constant legal obstacles stemming from the recharacterization, until Castro vindicated his position. As Outler notes in his brief, he has had relevant litigation pending for all but 177 days in the past eleven and a half years. Appellant Supp. Br. at 26.
Following the recharacterization of his original Rule 33 motion as a § 2255 petition, Outler immediately appealed to this Court, arguing that the district court had improperly recharacterized his motion. When we rejected his claim based on Circuit precedent which the Supreme Court would later overturn in its retroactively applicable Castro decision, Outler twice requested permission to file a successive § 2255 motion. We denied these requests as well, at which point Outler filed a § 2241 habeas petition in the federal district court where he was incarcerated, raising substantially similar issues about the improper characterization of his first petition. He also sought certiorari from the United States Supreme Court, and filed two Rule 60(b) motions seeking relief from judgment and a motion under 18 U.S.C. § 3582(c)(2) seeking reduction of his sentence. Then, in December 2003, the Supreme Court decided Castro, holding that when a district court recharacterizes a pro *1288 se litigant’s motion as a § 2255, it must notify the litigant of its decision, explain “that any subsequent § 2255 motion will be subject to the restrictions on ‘second or successive’ motions, and provide the litigant an opportunity to withdraw the motion or to amend it so that it contains all the § 2255 claims he believes he has.” 540 U.S. at 383, 124 S.Ct. 786. Because Outler was not given such a warning, he clearly fell within Castro’s rule. With the succes-siveness obstacle to his § 2255 motion thus removed, Outler acted quickly. In April 2004, he filed the instant motion, again asserting the claims he had tried to raise in a variety of federal courts in the years since his conviction, and an additional claim that he was not competent to stand trial. The district court nevertheless twice rejected the petition, first on the grounds that it was successive — a determination which we vacated in light of Castro — and later on the grounds that it was untimely and that Outler was not entitled to equitable tolling because he had not diligently pursued his claims.
Although it never explicitly rules that Outler failed to show the diligence required for equitable tolling, the majority does say that Outler “failed to challenge the recharacterization of his pleading to the fullest extent,” Maj. Op. at 1282,[3] and that he has failed to demonstrate “that he was deterred by the recharacterization from asserting additional claims before the expiration of his statute of limitations.” Id. at 1282. Based on the extensive litigation described above, I cannot agree with the first point, and I do not believe that the second point — even if I agreed with it — is sufficient to deny equitable tolling.
The majority repeatedly suggests that Outler was required to show “additional claims” that the recharacterization deterred him from filing. Even if this were so, Outler did, as the majority recognizes, include in his first habeas petition a previously unasserted argument regarding his capacity to stand trial. This was an “additional claim” that was not part of the original, recharacterized motion. Outler raised this new claim in the first self-identified § 2255 petition he was allowed to file. Additionally, the fact that Outler immediately challenged the recharacterization in his 1996 appeal is further evidence that he had additional claims he wished to assert.
Furthermore, I do not believe it was ever Outler’s burden, in the absence of the required Castro warnings, to show that he had “additional claims” he wished to assert. The Supreme Court in Castro held that recharacterizations are improper “unless the court first warns the pro se litigant about the consequences of the rechar-acterization, thereby giving the litigant an opportunity to contest the recharacterization, or to withdraw or amend the motion.” Castro, 540 U.S. at 382, 124 S.Ct. 786. The Court recognized that part of the purpose of the required warning was to “provide the litigant an opportunity to withdraw the motion or to amend it so that it contains all the § 2255 claims he believes he has.” Id. at 383, 124 S.Ct. 786. Outler was never given the chance to amend his complaint to show that he had any additional claims, because he was never given the required warning. “[T]he very point of the warning is to help the pro se litigant understand not only (1) whether he should withdraw or amend his motion, but also (2) whether he should contest the recharacterization, say, on appeal.” Id. See also Nolan v. United States, 358 F.3d 480, 485 (7th Cir.2004) (explaining rule *1289 that when a prisoner files a Rule 33 motion in the year after her conviction became final, “we instructed the district courts first to ask the petitioner if she planned to raise any other issues in a § 2255 motion, and then to defer ruling on the Rule 33 motion so that the claim could be considered together with any other issues”). Thus the very purpose of the required Castro warnings is, at least in part, to discover whether petitioners have additional claims they wish to assert in an amended pleading. The district court in this case failed to provide the required warnings, and thus did not inquire whether Outler had any additional claims. In the absence of such an inquiry, Outler’s failure to specify “additional claims” when he challenged the recharacterization of his motion cannot be the basis for denying the equitable tolling to which he is otherwise entitled.
Outler, to his credit, contested the re-characterization even without a Castro warning. His failure to specifically assert in 1996 that he had additional claims is analogous to the failure of the petitioner in Castro to appeal the recharacterization of his Rule 33 motion.[4] Both are understandable responses to the district court’s failure to warn them about the consequences of the recharacterization. The Supreme Court concluded that Castro’s failure to appeal the recharacterization made no difference to its analysis. Castro, 540 U.S. at 384, 124 S.Ct. 786. The Court held that unwarned pro se litigants — as both Outler and Castro were — simply cannot make informed judgments about whether to amend a petition or challenge a recharac-terization. Id. “Indeed, an unwarned pro se litigant’s failure to appeal a recharacter-ization simply underscores the practical importance of providing the warning.” Id.
After reviewing the case record, I find it difficult to imagine how much more diligence Outler could have exhibited. For more than a decade, he has actively attempted to assert the substantive claims contained in his present § 2255 petition (some of which differ from those raised in his Rule 33 motion) despite the numerous procedural obstacles placed in his way. In my opinion, the district court’s determination that Outler failed to show due diligence represents clear error.

III. Equitable Tolling In This Case Is In Line With Persuasive Authority From Other Circuits, And Is Necessary To Vindicate The Supreme Court’s Holding In Castro

Many of our sister circuits have considered this very problem, both before and after Castro, and concluded that it demands the application of equitable tolling. In United States v. Kelly, 235 F.3d 1238 (10th Cir.2000), the United States Court of Appeals for the Tenth Circuit anticipated Castro, requiring that district courts ensure that pro se petitioners understand and agree to the consequences of treating a motion purportedly made under some other rule as having been made under § 2255. Id. at 1242. In doing so, the court recognized:
[T]he one-year statute of limitations imposed by AEDPA ordinarily would bar the motion at this point. See § 2255, paragraph 6. At the time of the district court’s ruling, Kelly had several months remaining in which to file a timely § 2255 motion, and it was the court’s unilateral action that essentially prevented him from doing so. Additionally, he has diligently pursued his claim since then. Consequently, out of concern for *1290 fairness, we hold that the limitations period on the filing of Kelly’s § 2255 motion should be tolled from the date the district court recharacterized his motion as a § 2255 motion, on October 18, 1999, until the date of this decision.
Id. at 1242-43 (emphasis added). Other circuits, likewise anticipating Castro, reached the same conclusion. United States v. Miller, 197 F.3d 644, 652-53 (3d Cir.1999) (“Because the District Court in this case unilaterally recharacterized Miller’s post-conviction motions as a § 2255 motion despite Miller’s subsequent objection, we will vacate the Court’s order and remand the case so that Miller may make all of his collateral arguments in a single § 2255 motion .... [A]s in Adams, we will toll the statute of limitations to afford Miller his opportunity to refile his habeas petition. He should do so within 120 days or be barred from reconsideration.”) (citations omitted); Adams v. United States, 155 F.3d 582, 584 n. 2 (2d Cir.1998) (“Because the district court’s ruling came at a time when Adams still had several months in which to file a § 2255 motion, but had serious reason to doubt that he could satisfy AEDPA’s stringent limitations on successive motions, fairness demands that the statute of limitations be tolled to afford Adams an opportunity to file his first § 2255 motion, provided that he does so promptly.”).
Many of these opinions specifically foresaw the problems the statute of limitations would raise, and required district courts recharacterizing petitions to notify petitioners of the one-year limitation.[5] See, e.g., Adams, 155 F.3d at 584 n. 2 (“We note in addition that, in dealing with the question of possible recharacterization, district judges must be sensitive to another problem arising from AEDPA — its one-year period of limitation for the bringing of petitions under §§ 2254 or 2255. In giving notice to the movant on the issue of re-characterization, care should be taken to advise him of this limitation period.”) (citation omitted); Morales v. United States, 304 F.3d 764, 767 (8th Cir.2002) (“When a district court intends to reclassify a pro se litigant’s pleading as a § 2255 motion, it must do two things. First, the court must warn the litigant of the restrictions on second or successive motions, and of the one-year limitations period, set forth in 28 U.S.C. § 2255. Second, the court must provide him an opportunity either to consent to the reclassification or to withdraw his motion.”); United States v. Emmanuel, 288 F.3d 644, 649 (4th Cir.2002) (“If a prisoner files a motion that is not denominated a § 2255 motion and the court at its option prefers to convert it into the mov-ant’s first § 2255 motion, the court shall first advise the movant that it intends to so recharacterize the motion. The court shall also notify the movant of the § 2255 restrictions on second or successive motions, the one-year period of limitations, and the four dates in § 2255 to be used in determining the starting date for the limitations period.”); Miller, 197 F.3d at 652 (holding that the district court “should advise the petitioner that he can (1) have his motion ruled upon as filed; (2) if his motion is not styled as a § 2255 motion have his motion recharacterized as a § 2255 motion and heard as such, but lose his ability to file successive petitions absent certification by the court of appeals; or (3) withdraw the motion, and file one all-inclusive § 2255 *1291 petition within the one-year statutory period.”) (emphasis added).
The majority distinguishes these cases on the grounds that they involve petitioners who were planning to assert additional claims when their motions were first re-characterized. Although it is true that the petitioners in Kelly, Adams, and Miller all had additional claims they wished to assert, that fact was not central to the holding of any of the cases. Moreover, for the reasons set out above, I believe that Outler has sufficiently demonstrated that he had “additional claims” to assert, even though, in the absence of Castro warnings, it was never his burden to show them. Nor is it fair to distinguish Kelly, as the majority does, on the grounds that “[ujnlike Kelly, who successfully challenged the recharac-terization of his claims in the same proceeding in which they were recharacter-ized, Outler is attempting to challenge a recharacterization ruling in a 1995 district court decision, affirmed by the Eleventh Circuit in 1998 — a long closed case.” Maj. Op. at 1284. Outler is not “attempting to challenge a recharacterization ruling.” He has already done so, successfully, as a prior panel of this Circuit faithfully applied Castro and held that the “recharacterization ruling” in this case was flawed. The fact that it occurred in 1998, and was not corrected until 2005, is no fault of Outler’s. The petitioners in Kelly, Adams, and Miller succeeded because their Circuits’ precedent — like that of “almost every Court of Appeals” except this one, Castro, 540 U.S. at 383, 124 S.Ct. 786—already required the warnings which the Supreme Court described in Castro.
Moreover, I note that if petitioners like Outler (or indeed Castro himself) were to be time-barred from filing the § 2255 habeas petitions which were forbidden before Castro, then Castro was a hollow holding indeed: Nearly all of the petitions which the Supreme Court clearly meant to allow as non-successive would now be time-barred. The Supreme Court, which is well aware of the time limitations AEDPA imposes on habeas filings, cannot have intended this result. For us to hold otherwise effectively undermines Castro’s intended retroactive effect. See Castro, 540 U.S. at 376, 124 S.Ct. at 788.
CONCLUSION
The district court’s sua sponte recharac-terization of Outler’s motion was unfair. The court today is equally unfair in denying him the benefit of a doctrine which was designed to correct such inequities. Out-ler is entitled to equitable tolling because he diligently pursued his claims despite the extraordinary circumstances caused by the district court’s improper recharacteri-zation of his initial motion.[6] For that reason, I respectfully dissent.

. The majority is correct that Outler "is arguing that the change of law [due to Castro] demonstrates that long-closed previous litigation was decided against him incorrectly.” Maj. Op. at 1281. But of course we have already decided — based on the Supreme Court’s opinion in Castro — that this was the case, and that the recharacterization was improper. Outler v. United States, 129 Fed.Appx. 553 (11th Cir.2005). Outler is thus undoubtedly right that the previous litigation regarding the propriety of the recharacterization “was decided against him incorrectly,” no matter how "long-closed" that litigation is. The merits of Outler's underlying habeas claims are not before us, and I express no opinion on them here.

. The majority points out that "[njothing in Castro indicates that a recharacterization is unlawful.” Maj. Op. at 1279. This is true, but irrelevant. Recharacterization without a warning of the conséquences — and there was no such warning given to Outler—is unlawful. Castro, 540 U.S. at 383, 124 S.Ct. 786. Moreover, while the majority notes that “pro se litigants, like all others, are deemed to know of the one-year statute of limitations” on habeas petitions, Maj. Op. at 1282 n.4, it fails to recognize that it was the court, not Outler, that invoked § 2255.

. The majority does acknowledge Outler's "numerous filings seeking to challenge the district court's recharacterization of his 1995 Rule 33 motion for a new trial and asserting his various claims." Maj. Op. at 1281.

. I note that, unlike Castro, Outler did appeal the judicial recharacterization of his Rule 33 motion, despite the fact that both Castro and Outler faced the same Circuit law at the time of their recharacterizations.

. I believe that the majority overstates its position when it says that "[ajlthough Castro held that a pro se litigant should be given actual notice of the restrictions on successive § 2255 motions, no case has ever held that a pro se litigant should be given actual notice of a statute of limitations.” Maj. Op. at 1282 n.4. Many of our sister circuits have held exactly that, in cases just like this one.

. Because I believe that Outler is entitled to equitable tolling, I do not reach his claims that his petition was timely under 28 U.S.C. § 2255 ¶ 6(2) and (3).