CASTRO *v.* UNITED STATES

No. 02–6683.   Argued October 15, 2003—Decided December 15, 2003

BREYER, J., delivered the opinion of the Court, in which REHNQUIST, C. J., and STEVENS, O'CONNOR, KENNEDY, SOUTER, and GINSBURG, JJ., joined, and in which SCALIA and THOMAS, JJ., joined as to Parts I and II. ·SCALIA, J., filed an opinion concurring in part and concurring in the judgment, in which THOMAS, J., joined, *post*, p. 385.

*Michael G. Frick*, by appointment of the Court, *post*, p. 807, argued the cause and filed briefs for petitioner.

*Dan Himmelfarb* argued the cause for the United States. With him on the brief were *Solicitor General Olson, Assistant Attorney General Chertoff, Deputy Solicitor General Dreeben,* and *Nina Goodman.**

JUSTICE BREYER delivered the opinion of the Court.

Under a longstanding practice, a court sometimes treats as a request for habeas relief under 28 U. S. C. § 2255 a motion that a *pro se* federal prisoner has labeled differently. Such recharacterization can have serious consequences for the prisoner, for it subjects any subsequent motion under § 2255 to the restrictive conditions that federal law imposes upon a "second or successive" (but not upon a first) federal habeas motion. § 2255, ¶ 8. In light of these consequences, we hold that the court cannot so recharacterize a *pro se* litigant's motion as the litigant's first § 2255 motion *unless* the court informs the litigant of its intent to recharacterize, warns the litigant that the recharacterization will subject subsequent § 2255 motions to the law's "second or successive" restrictions, and provides the litigant with an opportunity to withdraw, or to amend, the filing. Where these things are not done, a recharacterized motion will not count as a § 2255 motion for purposes of applying § 2255's "second or successive" provision.

I

This case focuses upon two motions that Hernan O'Ryan Castro, a federal prisoner acting *pro se,* filed in federal court. He filed the first motion in 1994, the second in 1997.

A

The relevant facts surrounding the 1994 motion are the following:

---

**Paul Mogin* and *Lisa B. Kemler* filed a brief for the National Association of Criminal Defense Lawyers as *amicus curiae* urging reversal.

(1) On July 5, 1994, Castro filed a *pro se* motion attacking his federal drug conviction, a motion that he called a Rule 33 motion for a new trial.   See Fed. Rule Crim. Proc. 33.

(2) The Government, in its response, said that Castro's claims were "more properly cognizable" as federal habeas corpus claims, *i. e.*, claims made under the authority of 28 U. S. C. § 2255.   But, the Government added, it did not object to the court's considering Castro's motion as having invoked both Rule 33 and § 2255.

(3) The District Court denied Castro's motion on the merits.   In its accompanying opinion, the court generally referred to Castro's motion as a Rule 33 motion; but the court twice referred to it as a § 2255 motion as well.   App. 137–144.

(4) Castro, still acting *pro se*, appealed, but he did not challenge the District Court's recharacterization of his motion.

(5) The Court of Appeals summarily affirmed.   It said in its one-paragraph order that it was ruling on a motion based upon both Rule 33 and § 2255.   Judgt. order reported at 82 F. 3d 429 (CA11 1996); App. 147.

### B

The relevant facts surrounding the 1997 motion are the following:

(1) On April 18, 1997, Castro, acting *pro se*, filed what he called a § 2255 motion.   The motion included claims not raised in the 1994 motion, including a claim of ineffective assistance of counsel.

(2) The District Court denied the motion; Castro appealed; and the Court of Appeals remanded for further consideration of the ineffective-assistance-of-counsel claim.   It also asked the District Court to consider whether, in light of the 1994 motion, Castro's motion was his second § 2255 motion, rather than his first.

(3) On remand, the District Court appointed counsel for Castro.   It then decided that the 1997 motion was indeed

Castro's second § 2255 motion (the 1994 motion being his first). And it dismissed the motion for failure to comply with one of § 2255's restrictive "second or successive" conditions (namely, Castro's failure to obtain the Court of Appeals' permission to file a "second or successive" motion). § 2255, ¶ 8. The District Court granted Castro a certificate to appeal its "second or successive" determination. § 2253(c)(1).

(4) The Eleventh Circuit affirmed by a split (2-to-1) vote. 290 F. 3d 1270 (2002). The majority "suggested" and "urged" district courts in the future to "warn prisoners of the consequences of recharacterization and provide them with the opportunity to amend or dismiss their filings." *Id.*, at 1273, 1274. But it held that the 1994 court's failure to do so did not legally undermine its recharacterization. Hence, Castro's current § 2255 motion was indeed his second habeas motion. *Id.*, at 1274.

Other Circuits have taken a different approach. *E. g., United States* v. *Palmer,* 296 F. 3d 1135, 1145–1147 (CADC 2002) (announcing a rule *requiring* courts to notify *pro se* litigants prior to recharacterization and refusing to find the § 2255 motion before it "second or successive" since such notice was lacking). We consequently granted Castro's petition for certiorari.

II

We begin with a jurisdictional matter. We asked the parties to consider the relevance of a provision in the federal habeas corpus statutes that says that the

"grant or denial of an authorization by a court of appeals to file a second or successive application . . . shall not be the subject of a petition for . . . a writ of certiorari." 28 U. S. C. § 2244(b)(3)(E).

After receiving the parties' responses, we conclude that this provision does not bar our review here.

Castro's appeal to the Eleventh Circuit did not concern an "authorization . . . to file a second or successive application."

The District Court certified for appeal the question whether Castro's § 2255 motion was his first such motion or his second. Castro then argued to the Eleventh Circuit that his § 2255 motion was his first; and he asked the court to reverse the District Court's dismissal of that motion. He nowhere asked the Court of Appeals to grant, and it nowhere denied, any "authorization . . . to file a second or successive application."

The Government argues that the Eleventh Circuit's opinion had the *effect* of denying "authorization . . . to file a second . . . application" because the court said in its opinion that Castro's motion could not meet the requirements for second or successive motions. 290 F. 3d, at 1273. For that reason, the Government concludes, the court's decision falls within the scope of the jurisdictional provision. Brief for United States 16.

In our view, however, this argument stretches the words of the statute too far. Given the context, we cannot take these words in the opinion as a statutorily relevant "denial" of a request that was not made. Even if, for argument's sake, we were to accept the Government's characterization, the argument nonetheless would founder on the statute's requirement that the "denial" must be the *"subject"* of the certiorari petition. The "subject" of Castro's petition is not the Court of Appeals' "denial of an authorization." It is the lower courts' refusal to recognize that this § 2255 motion is his first, not his second. That is a very different question. Cf. *Adamo Wrecking Co.* v. *United States*, 434 U. S. 275, 282–283 (1978) (statute barring court review of lawfulness of agency "emission standard" in criminal case does not bar court review of whether regulation *is* an "emission standard").

Moreover, reading the statute as the Government suggests would produce troublesome results. It would create procedural anomalies, allowing review where the lower court decision disfavors, but denying review where it favors, the Gov-

ernment. Cf. *Stewart* v. *Martinez-Villareal*, 523 U. S. 637, 641–642 (1998) (allowing the Government to obtain review of a decision that a habeas corpus application is *not* "second or successive"). It would close our doors to a class of habeas petitioners seeking review without any clear indication that such was Congress' intent. Cf. *Felker* v. *Turpin*, 518 U. S. 651, 660–661 (1996). And any such conclusion would prove difficult to reconcile with the basic principle that we "read limitations on our jurisdiction to review narrowly." *Utah* v. *Evans*, 536 U. S. 452, 463 (2002).

We conclude that we have the power to review Castro's claim, and we turn to the merits of that claim.

### III

Federal courts sometimes will ignore the legal label that a *pro se* litigant attaches to a motion and recharacterize the motion in order to place it within a different legal category. See, *e. g., Raineri* v. *United States*, 233 F. 3d 96, 100 (CA1 2000); *United States* v. *Detrich*, 940 F. 2d 37, 38 (CA2 1991); *United States* v. *Miller*, 197 F. 3d 644, 648 (CA3 1999); *Raines* v. *United States*, 423 F. 2d 526, 528, n. 1 (CA4 1970); *United States* v. *Santora*, 711 F. 2d 41, 42 (CA5 1983); *United States* v. *McDowell*, 305 F. 2d 12, 14 (CA6 1962); *Henderson* v. *United States*, 264 F. 3d 709, 711 (CA7 2001); *McIntyre* v. *United States*, 508 F. 2d 403, n. 1 (CA8 1975) *(per curiam); United States* v. *Eatinger*, 902 F. 2d 1383, 1385 (CA9 1990) *(per curiam); United States* v. *Kelly*, 235 F. 3d 1238, 1242 (CA10 2000); *United States* v. *Jordan*, 915 F. 2d 622, 625 (CA11 1990); *United States* v. *Tindle*, 522 F. 2d 689, 693 (CADC 1975) *(per curiam).* They may do so in order to avoid an unnecessary dismissal, *e. g., id.,* at 692–693, to avoid inappropriately stringent application of formal labeling requirements, see *Haines* v. *Kerner*, 404 U. S. 519, 520 (1972) *(per curiam),* or to create a better correspondence between the substance of a *pro se* motion's claim and its underlying

legal basis, see *Hughes* v. *Rowe,* 449 U. S. 5, 10 (1980) *(per curiam); Andrews* v. *United States,* 373 U. S. 334 (1963).

We here address one aspect of this practice, namely, certain legal limits that nine Circuits have placed on recharacterization. Those Circuits recognize that, by recharacterizing as a first § 2255 motion a *pro se* litigant's filing that did not previously bear that label, the court may make it significantly more difficult for that litigant to file another such motion. They have consequently concluded that a district court may not recharacterize a *pro se* litigant's motion as a request for relief under § 2255—unless the court first warns the *pro se* litigant about the consequences of the recharacterization, thereby giving the litigant an opportunity to contest the recharacterization, or to withdraw or amend the motion. See *Adams* v. *United States,* 155 F. 3d 582, 583 (CA2 1998) *(per curiam); United States* v. *Miller, supra,* at 646–647 (CA3); *United States* v. *Emmanuel,* 288 F. 3d 644, 646–647 (CA4 2002); *In re Shelton,* 295 F. 3d 620, 622 (CA6 2002) *(per curiam); Henderson* v. *United States, supra,* at 710–711 (CA7); *Morales* v. *United States,* 304 F. 3d 764, 767 (CA8 2002); *United States* v. *Seesing,* 234 F. 3d 456, 463 (CA9 2000); *United States* v. *Kelly, supra,* at 1240–1241 (CA10); *United States* v. *Palmer,* 296 F. 3d, at 1146 (CADC); see also 290 F. 3d, at 1273, 1274 (case below) *(suggesting* that courts provide such warnings).

No one here contests the lawfulness of this judicially created requirement. The Government suggests that Federal Rule of Appellate Procedure 47 provides adequate underlying legal authority for the procedural practice. Brief for United States 42. It suggests that this Court has the authority to regulate the practice through "the exercise" of our "supervisory powers" over the Federal Judiciary. *E. g., McNabb* v. *United States,* 318 U. S. 332, 340–341 (1943). And it notes that limiting the courts' authority to recharacterize, approximately as the Courts of Appeals have done,

"is likely to reduce and simplify litigation over questions of characterization, which are often quite difficult." Brief for United States 42.

We agree with these suggestions. We consequently hold, as almost every Court of Appeals has already held, that the lower courts' recharacterization powers are limited in the following way:

The limitation applies when a court recharacterizes a *pro se* litigant's motion as a first § 2255 motion. In such circumstances the district court must notify the *pro se* litigant that it intends to recharacterize the pleading, warn the litigant that this recharacterization means that any subsequent § 2255 motion will be subject to the restrictions on "second or successive" motions, and provide the litigant an opportunity to withdraw the motion or to amend it so that it contains all the § 2255 claims he believes he has. If the court fails to do so, the motion cannot be considered to have become a § 2255 motion for purposes of applying to later motions the law's "second or successive" restrictions. § 2255, ¶ 8.

## IV

The District Court that considered Castro's 1994 motion failed to give Castro warnings of the kind we have described. Moreover, this Court's "supervisory power" determinations normally apply, like other judicial decisions, retroactively, at least to the case in which the determination was made. *McNabb, supra*, at 347 (applying new supervisory rule to case before the Court). Hence, given our holding in Part III, *supra*, Castro's 1994 motion cannot be considered a first § 2255 motion, and his 1997 motion cannot be considered a "second or successive" motion—unless there is something special about Castro's case.

The Government argues that there is something special: Castro failed to appeal the 1994 recharacterization. According to the Government, that fact makes the 1994 recharacter-

ization valid as a matter of "law of the case." And, since the 1994 recharacterization is valid, the 1997 § 2255 motion is Castro's second, not his first.

We do not agree. No Circuit that has considered whether to treat a § 2255 motion as successive (based on a prior unwarned recharacterization) has found that the litigant's failure to challenge that recharacterization makes a difference. See *Palmer, supra,* at 1147; see also *Henderson,* 264 F. 3d, at 711–712; *Raineri,* 233 F. 3d, at 100; *In re Shelton, supra,* at 622. That is not surprising, for the very point of the warning is to help the *pro se* litigant understand not only (1) whether he should withdraw or amend his motion, but also (2) whether he should *contest* the recharacterization, say, on appeal. The "lack of warning" prevents his making an informed judgment in respect to the latter just as it does in respect to the former. Indeed, an unwarned *pro se* litigant's failure to appeal a recharacterization simply underscores the practical importance of providing the warning. Hence, an unwarned recharacterization cannot count as a § 2255 motion for purposes of the "second or successive" provision, whether the unwarned *pro se* litigant does, or does not, take an appeal.

The law of the case doctrine cannot pose an insurmountable obstacle to our reaching this conclusion. Assuming for argument's sake that the doctrine applies here, it simply "expresses" common judicial "practice"; it does not "limit" the courts' power. See *Messenger* v. *Anderson,* 225 U. S. 436, 444 (1912) (Holmes, J.). It cannot prohibit a court from disregarding an earlier holding in an appropriate case which, for the reasons set forth, we find this case to be.

The judgment of the Court of Appeals is vacated, and the case is remanded for further proceedings consistent with this opinion.

*So ordered.*

JUSTICE SCALIA, with whom JUSTICE THOMAS joins, concurring in part and concurring in the judgment.

I concur in Parts I and II of the Court's opinion and in the judgment of the Court. I also agree that this Court's consideration of Castro's challenge to the status of his recharacterized motion is neither barred by nor necessarily resolved by the doctrine of law of the case.

I write separately because I disagree with the Court's laissez-faire attitude toward recharacterization. The Court promulgates a new procedure to be followed if the district court desires the recharacterized motion to count against the *pro se* litigant as a first 28 U. S. C. § 2255 motion in later litigation. (This procedure, by the way, can be ignored with impunity by a court bent upon aiding *pro se* litigants at all costs; the only consequence will be that the litigants' later § 2255 submissions cannot be deemed "second or successive.") The Court does not, however, place any limits on when recharacterization may occur, but to the contrary treats it as a routine practice which may be employed "to avoid an unnecessary dismissal," "to avoid inappropriately stringent application of formal labeling requirements," or "to create a better correspondence between the substance of a *pro se* motion's claim and its underlying legal basis." *Ante,* at 381–382. The Court does not address whether Castro's motion filed under Federal Rule of Criminal Procedure 33 should have been recharacterized, and its discussion scrupulously avoids placing any limits on the circumstances in which district courts are permitted to recharacterize. That is particularly regrettable since the Court's new recharacterization procedure does not include an option for the *pro se* litigant to insist that the district court rule on his motion as filed; and gives scant indication of what might be a meritorious ground for contesting the recharacterization on appeal.

In my view, this approach gives too little regard to the exceptional nature of recharacterization within an adversar-

ial system, and neglects the harm that may be caused *pro se* litigants even when courts do comply with the Court's newly minted procedure. The practice of judicial recharacterization of *pro se* litigants' motions is a mutation of the principle that the allegations of a *pro se* litigant's complaint are to be held "to less stringent standards than formal pleadings drafted by lawyers." *Haines* v. *Kerner,* 404 U. S. 519, 520 (1972) *(per curiam).* "Liberal construction" of *pro se* pleadings is merely an embellishment of the notice-pleading standard set forth in the Federal Rules of Civil Procedure, and thus is consistent with the general principle of American jurisprudence that "the party who brings a suit is master to decide what law he will rely upon." *The Fair* v. *Kohler Die & Specialty Co.,* 228 U. S. 22, 25 (1913). Our adversary system is designed around the premise that the parties know what is best for them, and are responsible for advancing the facts and arguments entitling them to relief.

Recharacterization is unlike "liberal construction," in that it requires a court deliberately to override the *pro se* litigant's choice of procedural vehicle for his claim. It is thus a paternalistic judicial exception to the principle of party self-determination, born of the belief that the "parties know better" assumption does not hold true for *pro se* prisoner litigants.

I am frankly not enamored of any departure from our traditional adversarial principles. It is not the job of a federal court to create a "better correspondence" between the substance of a claim and its underlying procedural basis. But if departure from traditional adversarial principles is to be allowed, it should certainly not occur in any situation where there is a risk that the patronized litigant will be harmed rather than assisted by the court's intervention. It is not just a matter of whether the litigant is *more likely,* or even *much more likely,* to be helped rather than harmed. For the overriding rule of judicial intervention must be "First, do *no harm.*" The injustice caused by letting the litigant's

own mistake lie is regrettable, but incomparably less than the injustice of *producing* prejudice through the court's intervention.

The risk of harming the litigant always exists when the court recharacterizes into a first § 2255 motion a claim that is procedurally or substantively deficient in the manner filed. The court essentially substitutes the litigant's ability to bring his merits claim now, for the litigant's *later* ability to bring the same claim (or any other claim), perhaps with stronger evidence. For the later § 2255 motion will then be burdened by the limitations on second or successive petitions imposed by the Antiterrorism and Effective Death Penalty Act of 1996, 110 Stat. 1214. A *pro se* litigant whose non-§ 2255 motion is dismissed on procedural grounds and one whose recharacterized § 2255 claim is denied on the merits both end up as losers in their particular actions, but the loser on procedure is better off because he is not stuck with the consequences of a § 2255 motion that he never filed.

It would be an inadequate response to this concern to state that district courts should recharacterize into first § 2255 motions *only* when doing so is (1) procedurally necessary (2) to grant relief on the merits of the underlying claim. Ensuring that these conditions are met would often enmesh district courts in fact- and labor-intensive inquiries. It is an inefficient use of judicial resources to analyze the merits of every claim brought by means of a questionable procedural vehicle simply in order to determine whether to recharacterize—particularly in the common situation in which entitlement to relief turns on resolution of disputed facts. Moreover, even after that expenditure of effort the district court cannot be certain it is not prejudicing the litigant: the court of appeals may not agree with it on the merits of the claim.

In other words, even fully informed district courts that try their best not to harm *pro se* litigants by recharacterizing may nonetheless end up doing so because they cannot predict and protect against every possible adverse effect that may

flow from recharacterization. But if district courts are unable to provide this sort of protection, they should not recharacterize into first § 2255 motions at all. This option is available under the Court's opinion, even though the opinion does not prescribe it.

The Court today relieves Castro of the consequences of the recharacterization (to wit, causing his current § 2255 motion to be dismissed as "second or successive") because he was not given the warning that its opinion prescribes. I reach the same result for a different reason. Even if one does not agree with me that, because of the risk involved, pleadings should *never* be recharacterized into first § 2255 motions, surely one must agree that running the risk is unjustified *when there is nothing whatever to be gained by the recharacterization.* That is the situation here. Castro's Rule 33 motion was valid as a procedural matter, and the claim it raised was no weaker on the merits when presented under Rule 33 than when presented under § 2255. The recharacterization was therefore unquestionably improper, and Castro should be relieved of its consequences.

Accordingly, I concur in the judgment of the Court.