COURT OF APPEALS OF VIRGINIA

Present:    Judges Kelsey, Petty and Beales
Argued by teleconference

CHRISTIAN LEE RUSHING

                                                        OPINION BY
v.              Record No. 0723-10-1        JUDGE D. ARTHUR KELSEY
                                                        JULY 26, 2011
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF THE CITY OF HAMPTON
                        Wilford Taylor, Jr., Judge


        Kimberly Enderson Hensley (Office of the Public Defender, on
        brief), for appellant.

        Virginia B. Theisen, Senior Assistant Attorney General (Kenneth
        T. Cuccinelli, II, Attorney General, on brief), for appellee.


        A jury convicted Christian Lee Rushing of participating in a criminal street gang in

violation of Code § 18.2-46.2(A).  On appeal, Rushing asserts a single assignment of error

challenging the sufficiency of the evidence and requesting we reverse his conviction and dismiss

the charge.  Finding the evidence sufficient, we affirm.


                                                I.

        On appeal, we review the evidence in the "light most favorable" to the Commonwealth.

Commonwealth v. Hudson, 265 Va. 505, 514, 578 S.E.2d 781, 786 (2003).  This principle

requires us to "discard the evidence of the accused in conflict with that of the Commonwealth,

and regard as true all the credible evidence favorable to the Commonwealth and all fair

inferences to be drawn therefrom."  Parks v. Commonwealth, 221 Va. 492, 498, 270 S.E.2d 755,

759 (1980) (emphasis and citation omitted).  In determining whether there is sufficient evidence

to sustain a conviction, moreover, an appellate court must consider "all the evidence" admitted at

trial that is contained in the record. Hamilton v. Commonwealth, 279 Va. 94, 103, 688 S.E.2d 168, 173 (2010) (quoting Bolden v. Commonwealth, 275 Va. 144, 147, 654 S.E.2d 584, 586 (2008)).

From this perspective, the evidence at trial proved Rushing and an accomplice, William Travis Newton, went to the Hampton home of a person they believed to be a drug dealer, intending to rob him. Rushing targeted the victim after learning from his friend "Snails" (a member of the "Crips" gang) that the intended victim had $15,000 in cash inside the home. Armed with handguns, Rushing and Newton broke into the home wearing bandannas over their faces while the getaway car (driven by Newton's grandmother) waited a block away. Inside the home, they did not find the expected drug dealer but rather a 75-year-old man who owned the home. One of the intruders exclaimed, "let's get out of here; we got the wrong house." Newton shot the man, and both he and Rushing fled the scene.

Hampton police officers later arrested Newton and Rushing. At the time of his arrest, Rushing had in his pockets a set of brass knuckles, a straight razor, and several bandannas with blue, black, and white coloring. During a search of Newton's home, police found extensive evidence of gang activity, including gang notebooks, rules, graffiti, and eighteen blue, black, and white bandannas. Officers also found at Newton's address the two handguns Newton and Rushing used during the break-in.

At the joint jury trial of Newton and Rushing, the trial court admitted into evidence the gang notebooks, writings, drawings, and bandannas found in Newton's home. Over Rushing's objection, the court also admitted a photograph of Rushing making a pitchfork hand sign. Rushing's counsel argued no foundation had been laid for admitting the photograph. The prosecution's main witness was a police detective with expertise in identifying criminal gangs. Testifying as an expert, the detective stated the gang materials found in Newton's home were

those of a street gang called the Gangsta Disciples. The pitchfork hand sign and the gang affiliating colors of blue and black, the detective explained, identified the gang as the Gangsta Disciples.

The detective testified he spoke with Newton prior to trial. The detective used the secret greeting for the Gangsta Disciples (asking Newton if he was "Folk") and received from Newton the appropriate reply ("all is one"). Additional questions by the detective further confirmed Newton's membership in the gang. Newton also used the pitchfork hand sign, among others, to identify his gang membership.

The Gangsta Disciples, the detective testified, originated in Chicago and had twenty-three known members in Hampton. The detective stated Gangsta Disciples are "involved in all sorts of criminal activities, from robberies to burglaries, stolen cars, narcotics distribution." "That's what Larry Hoover is incarcerated for," the detective added, "one of the leaders." Advancement within the hierarchy of the gang, the detective added, required a member to commit various crimes escalating in seriousness.

The detective identified Deanthony Clark as a local member of the Gangsta Disciples. During the detective's testimony, the trial court admitted into evidence a conviction order showing Clark had pled guilty to carjacking and using a firearm during a felony. Over Rushing's objection, the trial court also admitted into evidence a sentencing order, plea agreement, and stipulation of facts showing Darryl Brandon Lollis had been convicted of gang participation and robbery. In the stipulation of facts, Lollis admitted to being a member of the Gangster Disciples — a phrase used at trial and on appeal interchangeably with Gangsta Disciples.[1]

---

[1] Rushing's opening brief on appeal, as well as his petition for appeal, states: "The Circuit Court also admitted, over appellant's objection, a prior conviction of an individual named Darryl Brandon Lollis in which Mr. Lollis was convicted in Norfolk of robbery and gang participation, specifically membership in Gangsta Disciples." See Petition for Appeal at 10-11;

- 3 -

The jury convicted Rushing of participating in a criminal street gang.  Rushing moved to set aside the gang participation verdict on the ground that no evidence proved his "membership in a gang, his active membership in a gang, or any transaction showing he participated in something for a gang."  The trial court denied the motion and entered final judgment.

II.

A.  THE SCOPE OF APPELLATE REVIEW

After reciting the standard of review governing sufficiency claims, the argument section of Rushing's brief opens with this assertion:  "The Circuit Court erred by finding the evidence sufficient to convict appellant of gang participation."  Appellant's Br. at 6.  The argument then proceeds to challenge individual items of evidence, claiming they were either inadmissible or insufficient to prove guilt.  The brief ends with exactly the same point:

> The *evidence was insufficient* to convict appellant of gang participation *because* there was no evidence that he had any knowledge of writings, drawings or gang paraphernalia found at 40 Deep Creek Road, the prior felony convictions of Mr. Clark and Mr. Lollis were improperly admitted, and the photo of appellant was improperly admitted and failed to prove any membership in Gangsta Disciples.

Id. at 10-11 (emphasis added).  On this ground, Rushing contends we should "reverse" his conviction and "dismiss the charge against him."  Id. at 11; see generally Rule 5A:20(f) (requiring appellant's brief to state "the precise relief sought" on appeal).

At oral argument, Rushing's counsel clarified that the evidentiary issues are "subsets" of the sufficiency assignment of error.  Oral Argument Audio at 00:50.  In other words, counsel explained, the argument on appeal was "two-pronged" — challenging the sufficiency of the *properly admitted* evidence, and, alternatively, challenging the sufficiency of *all* the evidence.

---

Appellant's Br. at 5.  So, too, in oral argument on appeal, Rushing's counsel treated the phrases as interchangeable.  See Oral Argument Audio at 7:28 to 8:21; see also App. at 250-51, 285, 292, 299, 402 (showing interchangeable use of the phrases at trial).

Id. at 2:25 to 2:34, 6:26 to 6:28. When asked at oral argument how counsel could "meld and blend" the arguments together to "make one argument," she replied that "even if" the improperly admitted exhibits are considered, the evidence "remains insufficient." Id. at 6:14 to 6:50.

In his brief, the Attorney General accurately restates Rushing's argument on appeal: "The defendant contends in his Assignment of Error that the *evidence was insufficient* to prove the charge of gang participation *because* prior felony convictions of gang members and a photograph of the defendant were improperly admitted." Appellee's Br. at 12 (emphasis added). Realizing Robinson's conflated argument can be defeated in either one of two ways, the Attorney General argues

> (i) our sufficiency review on appeal should take into account "*all* the evidence at trial, including evidence alleged to have been *erroneously admitted*," id. at 11 (citations omitted and emphasis added), and,
>
> (ii) the evidence challenged by Rushing "was *properly admitted* and was *sufficient* to sustain the conviction for gang participation," id. at 14 (emphasis added).

See also Oral Argument Audio at 14:03 to 14:11 (Assistant Attorney General pointing out that sufficiency of the evidence is the "overriding question" presented by this case).

We present in detail Rushing's argument on appeal to clarify the scope of our review. When a "reversal is for mere trial error, and not for evidentiary insufficiency, we will remand the case for a new trial." Gray v. Commonwealth, 220 Va. 943, 946, 265 S.E.2d 705, 706 (1980) (citations omitted). In this case, however, Rushing does not ask whether the claimed evidentiary errors warrant a remand for a new trial. "We thus do not answer this unasked question." Lay v. Commonwealth, 50 Va. App. 330, 336 n.3, 649 S.E.2d 714, 716 n.3 (2007). Under the adversarial model of adjudication, the litigants — not the judges — determine the issues to be decided, the facts to be presented, and the range of remedies to be sought. By necessity, the

adversarial model "is designed around the premise that the parties know what is best for them, and are responsible for advancing the facts and arguments entitling them to relief." Castro v. United States, 540 U.S. 375, 386 (2003) (Scalia, J., concurring in part).

For these reasons, we address only the sufficiency argument Rushing makes on appeal.[2] Under his "two-pronged" argument, Rushing contends we must limit our sufficiency review to the properly admitted evidence, and "even if" we consider the improperly admitted evidence, we should nevertheless find the evidence, in its entirety, insufficient to support the jury verdict. Oral Argument Audio at 2:25 to 2:34, 6:14 to 6:50; see also Appellant's Br. at 7-8 (arguing the court "erred by admitting certified copies of prior convictions of alleged gang members" because "the evidence was insufficient to show that Mr. Clark was a [gang] member"); id. at 9-10 (arguing the "photograph of appellant . . . was insufficient to prove his [gang] membership" because "no foundation was laid for the photo"). As Rushing frames the debate, the evidentiary issues are merely "subsets" of the sufficiency analysis. See Oral Argument Audio at 00:50.

## B. EVIDENTIARY ERRORS AND SUFFICIENCY

We begin our analysis by disagreeing with Rushing's assumption that we must first segregate the admissible evidence from the inadmissible before conducting a sufficiency review. Under settled principles, an appellate court reviewing the sufficiency of the evidence in a criminal case — with its concomitant double jeopardy implications — must consider all of the evidence actually admitted at trial without regard to whether it was properly admitted:

> An "appellate court's reversal for insufficiency of the evidence is in effect a determination that the government's case against the defendant was so lacking that the trial court should have entered a judgment of acquittal." Lockhart v. Nelson, 488 U.S. 33, 39

---

[2] We came to a similar conclusion in Lunsford v. Commonwealth, 55 Va. App. 59, 62, 683 S.E.2d 831, 833 (2009), where the appellant, "in essence, ask[ed] this Court to accept his argument that [certain items of evidence] were inadmissible hearsay, and ask[ed] that we then consider the sufficiency of the evidence to convict absent that evidence."

(1988). Because reversal for insufficiency of the evidence is equivalent to a judgment of acquittal, such a reversal bars a retrial. See Burks v. United States, 437 U.S. 1, 18 (1978). To "make the analogy complete" between a reversal for insufficiency of the evidence and the trial court's granting a judgment of acquittal, Lockhart, 488 U.S., at 42, *"a reviewing court must consider all of the evidence admitted by the trial court," regardless whether that evidence was admitted erroneously*, id., at 41.

McDaniel v. Brown, 130 S. Ct. 665, 672 (2010) (*per curiam*) (emphasis added); see Lockhart, 488 U.S. at 39-42; see generally 6 Wayne R. LaFave, Criminal Procedure § 25.4(c), at 652 (3d ed. 2007) ("As one court put it, the appellate court applying Burks is 'assessing the legal sufficiency of the evidence not at the trial that will be, but at the trial that was.'" (citation omitted)); 26 Moore's Federal Practice – Criminal Procedure § 629.30[2], at 629-62 (3d ed. 2007) ("A trial court . . . considers all of the evidence it has admitted, and to make the analogy complete it must be this same quantum of evidence that is considered by the reviewing court.").[3]

We acknowledge, but do not find controlling on this particular point, Crawford v. Commonwealth, 281 Va. 84, 112, 704 S.E.2d 107, 123-24 (2011), which stated a defendant's "Constitutional protections" forbid an appellate court from considering "evidence illegally admitted" at trial when "reviewing the sufficiency of the evidence." For two reasons, we cannot follow this *dictum*.

---

[3] See also Watts v. Commonwealth, 57 Va. App. 217, 232, 700 S.E.2d 480, 488 (2010) (stating "we must consider the improperly admitted [evidence] in our sufficiency analysis"); Andrews v. Creacey, 56 Va. App. 606, 620 n.4, 696 S.E.2d 218, 224 n.4 (2010) ("While wife on appeal challenges the admissibility of the guardian *ad litem's* report, we consider it in determining the sufficiency of the evidence."); Wilder v. Commonwealth, 55 Va. App. 579, 596 n.7, 687 S.E.2d 542, 550 n.7 (2010) ("The issue this Court must resolve in a case such as this is whether the evidence *actually presented* is sufficient as a matter of law, not whether the evidence that should have been presented is sufficient."); Lunsford, 55 Va. App. at 62, 683 S.E.2d at 833 ("When determining the sufficiency of the evidence, we consider all admitted evidence, including the evidence appellant here asserts was inadmissible."); Sprouse v. Commonwealth, 53 Va. App. 488, 493, 673 S.E.2d 481, 483 (2009) ("However, when assessing the sufficiency of the evidence on appeal, 'we consider all admitted evidence, including illegally admitted evidence.'" (citation omitted)); Hargraves v. Commonwealth, 37 Va. App. 299, 312-13, 557 S.E.2d 737, 743 (2002) (holding "we consider all admitted evidence, including illegally admitted evidence" (citing Lockhart, 488 U.S. at 41)).

First, Crawford held that, *even without* the inadmissible evidence, the remaining evidence was sufficient to prove the defendant's guilt. That conclusion made it logically unnecessary to determine whether the result would be any different *even with* the inadmissible evidence being considered. In other words, it did not matter whether the challenged evidence was considered for purposes of the sufficiency review — the unchallenged evidence was alone sufficient. See generally Cent. Green Co. v. United States, 531 U.S. 425, 431 (2001) (characterizing a portion of a prior opinion as "unquestionably dictum because it was not essential to our disposition"); Lofton Ridge, LLC v. Norfolk S. Ry., 268 Va. 377, 383, 601 S.E.2d 648, 651 (2004) (noting a "justification for the ruling" that was "unnecessary to the holding . . . is dicta").[4]

Second, the question whether "Constitutional protections" forbid an appellate court "reviewing the sufficiency of the evidence" from considering "evidence illegally admitted" at trial, Crawford, 281 Va. at 112, 704 S.E.2d at 123-24, involves an application of the double jeopardy doctrine.[5] Despite the "unusual and delicate situation," Wilson v. Taylor, 658 F.2d 1021, 1035 (5th Cir. 1981), in which we find ourselves, this much is certain: When a state supreme court opinion, whether in *dicta* or in its holding, conflicts with a holding of the United States Supreme Court on an issue of federal constitutional law, the United States Supreme Court ruling remains the binding precedent — "any state law, decision, or rule to the contrary

---

[4] Similar *dicta* exists in Velazquez v. Commonwealth, 263 Va. 95, 105-06, 557 S.E.2d 213, 219 (2002) ("If the evidence adduced at trial, excluding the improperly admitted expert opinion testimony, was insufficient to convict . . . , he is entitled to an acquittal . . . ."). But that declaration, too, was unnecessary to the actual holding in that case.

[5] Virginia courts "have consistently held that the protections afforded under the Virginia Constitution are co-extensive with those in the United States Constitution." Bennefield v. Commonwealth, 21 Va. App. 729, 739-40, 467 S.E.2d 306, 311 (1996) (citations omitted); see also Stephens v. Commonwealth, 263 Va. 58, 62, 557 S.E.2d 227, 230 (2002) ("Virginia's constitutional guarantee against double jeopardy affords a defendant the same guarantees as the federal Double Jeopardy Clause."); Martin v. Commonwealth, 221 Va. 720, 722, 273 S.E.2d 778, 780 (1981); Armstead v. Commonwealth, 55 Va. App. 354, 357, 685 S.E.2d 876, 877 (2009); Peterson v. Commonwealth, 5 Va. App. 389, 394, 363 S.E.2d 440, 443 (1987).

- 8 -

notwithstanding." Chesapeake & O. R. Co. v. Martin, 283 U.S. 209, 221 (1931). "Needless to say," only the United States Supreme Court "may overrule one of its precedents." Thurston Motor Lines, Inc. v. Jordan K. Rand, Ltd., 460 U.S. 533, 535 (1983) (*per curiam*). A "state supreme court," of course, "has no discretion to disregard" applicable holdings of the United States Supreme Court. Jaynes v. Commonwealth, 276 Va. 443, 458, 666 S.E.2d 303, 311 (2008).

In short, under the authority of United States Supreme Court decisions in McDaniel and Lockhart, an appellate court reviewing the sufficiency of the evidence "'must consider all of the evidence admitted by the trial court,' regardless of whether that evidence was admitted erroneously.'" McDaniel, 130 S. Ct. at 672 (quoting Lockhart, 488 U.S. at 41). Given this authority from the United States Supreme Court, our sufficiency analysis must consider, therefore, all of the evidence actually admitted at trial without regard to whether it was properly admitted. We thus do not segregate, as Rushing requests, the allegedly inadmissible evidence from all of the admitted evidence for the purpose of reviewing the sufficiency of the evidence supporting the jury's verdict.

C. APPELLATE REVIEW OF SUFFICIENCY CHALLENGES

An appellate court does not "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." Williams v. Commonwealth, 278 Va. 190, 193, 677 S.E.2d 280, 282 (2009) (quoting Jackson v. Virginia, 443 U.S. 307, 318-19 (1979)) (emphasis in original).[6] "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Id. (citation omitted

---

[6] See also Sullivan v. Commonwealth, 280 Va. 672, 676, 701 S.E.2d 61, 63 (2010); Prieto v. Commonwealth, 278 Va. 366, 399, 682 S.E.2d 910, 927 (2009); McMillan v. Commonwealth, 277 Va. 11, 19, 671 S.E.2d 396, 399 (2009); Jones v. Commonwealth, 277 Va. 171, 182, 670 S.E.2d 727, 734 (2009); Maxwell v. Commonwealth, 275 Va. 437, 442, 657 S.E.2d 499, 502 (2008).

and emphasis in original). Thus, when a jury has rendered its verdict, "it is not for this court to say that the evidence does or does not establish his guilt beyond a reasonable doubt because as an original proposition it might have reached a different conclusion." Cobb v. Commonwealth, 152 Va. 941, 953, 146 S.E. 270, 274 (1929). Suffice it to say, an "appellate court is no substitute for a jury." Id.[7]

Consequently, we are "not permitted to reweigh the evidence," Nusbaum v. Berlin, 273 Va. 385, 408, 641 S.E.2d 494, 507 (2007), because appellate courts have no authority "to preside *de novo* over a second trial," Haskins v. Commonwealth, 44 Va. App. 1, 11, 602 S.E.2d 402, 407 (2004). Instead, we give

> juries the wide discretion to which a living record, as distinguished from a printed record, logically entitles them. The living record contains many guideposts to the truth which are not in the printed record; not having seen them ourselves, we should give great weight to the conclusions of those who have seen and heard them.

Bradley v. Commonwealth, 196 Va. 1126, 1136, 86 S.E.2d 828, 834 (1955).

This deferential appellate standard "applies not only to findings of fact, but also to any reasonable and justified inferences the fact-finder may have drawn from the facts proved." Sullivan v. Commonwealth, 280 Va. 672, 676, 701 S.E.2d 61, 63-64 (2010); see also Clanton v. Commonwealth, 53 Va. App. 561, 566, 673 S.E.2d 904, 907 (2009) (*en banc*). Thus, a factfinder may "draw reasonable inferences from basic facts to ultimate facts," Haskins, 44 Va. App. at 10, 602 S.E.2d at 406 (citation omitted), unless doing so would push "into the realm of *non sequitur*," Thomas v. Commonwealth, 48 Va. App. 605, 608, 633 S.E.2d 229, 231 (2006) (citation omitted).

---

[7] See also Courtney v. Commonwealth, 281 Va. 363, 368, 706 S.E.2d 344, 347 (2011) ("As we have said on many occasions, '[I]f there is evidence to support the convictions, the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" (citation omitted)).

## D. CRIMINAL STREET GANG PARTICIPATION

The jury convicted Rushing of participating in a criminal street gang in violation of Code § 18.2-46.2(A), which provides: "Any person who actively participates in or is a member of a criminal street gang and who knowingly and willfully participates in any predicate criminal act committed for the benefit of, at the direction of, or in association with any criminal street gang shall be guilty of a Class 5 felony." The crime involves two elements — status and conduct. While either an active participant *or* member in a criminal street gang, the defendant must participate in a predicate criminal act related to any criminal street gang.

The status element turns on the statutory definition of a criminal street gang, which includes

> any ongoing organization, association, or group of three or more persons, whether *formal or informal*, (i) which has as one of its primary objectives or activities the commission of one or more criminal activities; (ii) which has an identifiable name or identifying sign or symbol; and (iii) whose members individually or collectively have engaged in the commission of, attempt to commit, conspiracy to commit, or solicitation of two or more predicate criminal acts, at least one of which is an act of violence, provided such acts were not part of a common act or transaction.

Code § 18.2-46.1 (emphasis added). The conduct element of the crime requires only proof that the defendant "knowingly and willfully" participated in a "predicate criminal act committed for the benefit of, at the direction of, or in association with any criminal street gang . . . ." Code § 18.2-46.2(A).

The evidence at trial amply supports the rationality of the jury verdict finding Rushing guilty of violating Code § 18.2-46.2(A). Testifying as a gang expert, the detective described the bandannas, colors, hand signs, and other unique indicia of membership associated with the Gangsta Disciples gang. The evidence showed Rushing wore a bandanna in Gangsta Disciples colors during the home invasion. The picture of him flashing the pitchfork hand sign, a symbol

unique to the gang, further confirms his status. The evidence also showed Rushing planned and executed the crime with Newton — who also wore a telltale bandanna during the crime, had evidence in his home of the pitchfork and other gang symbols, and used the secret Gangsta Disciples greeting.

In addition, the detective identified Deanthony Clark as a local member of the Gangsta Disciples. Clark's convictions for carjacking and use of a firearm during a felony, and Lollis's convictions for robbery and gang participation, prove the predicate criminal "acts of violence" committed "individually or collectively" by members of the putative gang under Code § 18.2-46.1. See Code § 19.2-297.1(A)(i)(e) (identifying robbery and carjacking as "acts of violence"). The stipulation of fact executed by Darryl Brandon Lollis, acknowledging his membership in the Gangsta Disciples, similarly satisfied the requirements of Code § 18.2-46.1.[8]

Rushing argues the evidence fails to establish the status element of Code § 18.2-46.2(A) because he had no relationship with either Clark or Lollis and did not participate in their respective crimes. Nothing in the governing statutes, however, requires such proof. The status element of Code § 18.2-46.2(A) requires only that the defendant actively participate in or be a member of a criminal street gang. The definition of a criminal street gang in Code § 18.2-46.1 includes any "formal or informal" group exhibiting three specified gang-related characteristics. The requirement that members of the group have "individually or collectively" committed predicate criminal acts, Code § 18.2-46.1, "permits proof of individually committed acts to establish a pattern of criminal gang activity." Corado v. Commonwealth, 47 Va. App. 315, 333,

---

[8] As noted earlier, the detective testified Gangsta Disciples are "involved in all sorts of criminal activities, from robberies to burglaries, stolen cars, narcotics distribution." "That's what Larry Hoover is incarcerated for," the detective added, "one of the leaders." Given our holding, we need not decide whether this evidence rendered harmless any evidentiary objections to the stipulation of fact by Lollis. See generally Kirby v. Commonwealth, 50 Va. App. 691, 698, 653 S.E.2d 600, 604 (2007) (summarizing harmless error standard for nonstructural trial error).

623 S.E.2d 452, 460 (2005) (construing former Code § 18.2-46.1). The defendant need not participate in the predicate criminal acts or have any personal relationship with the gang members who committed them.

Citing Taybron v. Commonwealth, 57 Va. App. 470, 703 S.E.2d 270 (2011), Rushing argues "[j]ust as in Taybron, the Commonwealth failed to demonstrate the existence of a criminal street gang under Va. Code § 18.2-46.2." Appellant's Br. at 9. We disagree. Despite its broad language, Taybron held "*only that*, in this case, the evidence fails to establish that appellant, a member of the 36th Street Bang Squad, was a member of the national Bloods or some other gang organization to which Turner and King also belonged." Id. at 486 n.6, 703 S.E.2d at 278 n.6 (emphasis added).

In other words, Taybron addressed only the question whether the evidence proved the defendant belonged to the same criminal street gang as those who had committed the predicate criminal acts. Taybron did not interpret the statutes to require that the members of the criminal street gang have any specific relationship with one another beyond belonging to the same gang. Nor did Taybron suggest the defendant must participate in the predicate acts used to prove the existence of a criminal street gang under Code § 18.2-46.1. Neither requirement appears in the statutes or our interpretation of them in Taybron.

### III.

In sum, the evidence before the jury, viewed in its entirety, amply supports the rationality of the jury's finding that Rushing participated in a criminal street gang in violation of Code § 18.2-46.2(A). We thus affirm Rushing's conviction.

Affirmed.

Petty, J., concurring, in part, and dissenting, in part.

I concur in the majority's holding that an appellate court must consider all the evidence that was introduced at trial in assessing the sufficiency of the evidence to support a conviction. I also concur in the majority's holding that the evidence was sufficient to support Rushing's conviction under Code § 18.2-46.2. However, for reasons I explain below, I believe that the majority's decision not to address Rushing's argument regarding the admissibility of a photograph ignores the admonition from the Supreme Court that cases should be decided on the merits unless a violation of a non-jurisdictional rule is "so substantial as to preclude the court's addressing the merits of the case," such that it would "interfer[e] with the orderly administration of justice." Moore v. Commonwealth, 276 Va. 747, 753, 755, 668 S.E.2d 150, 154, 155 (2008). In my opinion, if the appellant fairly presents the issue and the Commonwealth, without objecting to the scope of the assignment of error or the argument, addresses it on the merits, we should decide that issue. Thus, I would consider Rushing's argument that the trial court erred in admitting a photograph of Rushing making a hand sign associated with the Gangsta Disciples, conclude that the argument is well-taken, and reverse the conviction. Because the evidence was sufficient to support Rushing's conviction for participation in a criminal street gang, the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution does not bar a retrial. Thus, I would remand for a new trial if the Commonwealth be so advised.[9]

I.  SCOPE OF APPELLATE REVIEW

Rule 5A:12(c)(1) provides: "Under a heading entitled 'Assignments of Error,' the petition shall list, clearly and concisely and without extraneous argument, the specific errors in

---

[9] A new trial would permit the hearsay and Sixth Amendment Confrontation Clause objections to the admissibility of the judicial records regarding Clark and Lollis to be more thoroughly presented and developed. Therefore, I do not believe it necessary to decide those issues today.

- 14 -

the rulings below upon which the party intends to rely." While normally "[o]nly assignments of error assigned in the petition for appeal will be noticed by this Court," Rule 5A:12(c)(1)(i), "the text of the Rule does not prevent this Court, in its discretion and pursuant to its inherent authority, from considering such additional issues as long as the Court has acquired jurisdiction," Riner v. Commonwealth, 40 Va. App. 440, 455, 579 S.E.2d 671, 678 (2003) (citation omitted), aff'd, 268 Va. 296, 601 S.E.2d 555 (2004). "The purpose of assignments of error is to point out the errors with reasonable certainty in order to direct this court and opposing counsel to the points on which appellant intends to ask a reversal of the judgment, and to limit discussion to these points." Harlow v. Commonwealth, 195 Va. 269, 271, 77 S.E.2d 851, 853 (1953).

In a single assignment of error,[10] Rushing argues that:

> The Circuit Court erred by finding the evidence sufficient to convict appellant of gang participation because of insufficient evidence, because prior felony convictions of alleged gang members were improperly admitted, and a photo of appellant allegedly making a gang sign was improperly admitted.[11]

In a somewhat conflated argument, Rushing initially argues that the photograph was insufficient to prove his membership in the Gangsta Disciples. He then transitions into an

---

[10] In the petition for appeal, this assignment of error read:

> The Circuit Court erred by finding the evidence sufficient to convict appellant of gang participation because there was no evidence that appellant had any knowledge of gang writings, drawings or paraphernalia found at the co-defendant's home, prior felony convictions of alleged gang members were improperly admitted at appellant's trial, a photo of appellant allegedly making a gang sign was improperly admitted as evidence, and the photo did not prove appellant was a gang member.

We rephrased a portion of this assignment when we granted the appeal.

[11] Rushing also provides "[a]n exact reference to the pages of the transcript . . . where [his objection to the admission of the photograph was] preserved in the trial court." Rule 5A:12(c)(1).

argument that the Commonwealth failed to lay any foundation for the admission of the photograph and that without an adequate foundation the photograph was not admissible under the silent witness theory. Rushing concludes this argument with the statement, "[The photograph] should not have been admitted by the Circuit Court." Then, Rushing returns to his sufficiency argument by stating, "Furthermore, the picture was insufficient to prove any gang affiliation by appellant."[12]

The Commonwealth, recognizing that the assignment of error and argument actually address issues of both sufficiency and admissibility, correctly notes in its brief that "[a]rguments concerning the admissibility of evidence and the sufficiency of evidence raise different legal issues." It then addresses the merits of each issue separately. Under a sub-heading entitled, "Photograph of Rushing," the Commonwealth argues that "[t]he trial court did not abuse its discretion in admitting the photograph for the consideration of the jury." At no point, either on brief or at oral argument, did the Commonwealth ask us to limit the issues before us as the majority has done. The fact that the "'Attorney General understood the issue . . . and went on to address it,'" Moore, 276 Va. at 755, 668 S.E.2d at 154 (quoting Moore v. Commonwealth, 51 Va. App. 1, 6, 654 S.E.2d 305, 307 (2007) (en banc) (Petty, J., concurring in the result)), is one of the factors to consider in determining whether an appellant's "failure to adhere strictly to the requirements of Rule 5A:12(c)" is "so substantial as to preclude the Court of Appeals from addressing the merits of the case," id. at 754, 668 S.E.2d at 154.[13]

---

[12] The majority correctly points out that sufficiency and admissibility are two separate and distinct legal concepts. As this case demonstrates, conflating disparate issues in a single assignment of error is clearly not an example of effective appellate advocacy.

[13] I agree with the majority that "'the parties know what is best for them, and are responsible for advancing the facts and arguments entitling them to relief.'" Supra at 6 (quoting Castro v. United States, 540 U.S. 375, 386 (2003) (Scalia, J., concurring in part)). This is one reason why I defer to the Commonwealth's decision not to make the argument advanced by the majority.

Furthermore, panels of this Court are to "hear and determine . . . appeals granted in criminal cases." Code § 17.1-402(C). This language expresses the same legislative intent as does the language in Code § 17.1-402(D), obligating this Court sitting en banc to "consider and decide the case" before it: "This language indicates a clear legislative preference for the prompt and final disposition of appellate cases on the merits, when that can be done without interfering with the orderly administration of justice." Moore, 276 Va. at 755, 668 S.E.2d at 154-55. I believe that a fair and reasonable reading of both the assignment of error and the argument in this case permits us to address both the issue of the sufficiency of the evidence and that of the admissibility of the photograph without interfering with the orderly administration of justice. Thus, I believe that the majority wrongly declines to address the admissibility of the photograph.

## II.  ADMISSIBILITY OF THE PHOTOGRAPH

In order to establish that Rushing was a member of the Gangsta Disciples, the Commonwealth offered as evidence Exhibit Number 24, a photocopy of what appears to be two images of Rushing. One image depicts Rushing making a hand sign unique to the Gangsta Disciples. There is no information on the exhibit indicating where or when the images were made or how they came into the possession of the police. After Detective Gainer identified Rushing as the person depicted in the images, the Commonwealth marked the exhibit for identification and then asked Detective Gainer, "Was this photograph, what's been marked as Commonwealth's 24, provided to you or Detective Crouch?" Detective Gainer responded, "It was not provided to me." Based on this testimony, the trial court admitted Exhibit 24 into evidence.[14]

---

[14] Although the Commonwealth referred to the photocopy as a photograph, there was no testimony presented to establish whether this was a print of a digital image from an electronic device or a photocopy of an actual photograph. The legal principles regarding an adequate foundation are the same for either type of image, and I will refer to the exhibit as a photograph in my analysis.

"We consistently have held that the admission of photographs into evidence rests within the sound discretion of a trial court, and that the trial court's decision will not be disturbed on appeal unless the record discloses a clear abuse of discretion." Bailey v. Commonwealth, 259 Va. 723, 738, 529 S.E.2d 570, 579 (2000). It is well established that "[p]hotographs are generally admitted into evidence for two purposes: to illustrate a witness' testimony, and as an 'independent silent witness' of matters revealed by the photograph." Id. Here, the photograph of Rushing making a gang sign was not offered to illustrate a witness' testimony. No witness testified that he had observed Rushing making the gang sign, as the photograph portrayed. Rather, the photograph was offered as an independent "silent witness" of this fact. As such, the test for whether the photograph was admissible is "whether the evidence [was] sufficient to provide an adequate foundation assuring the accuracy of the process producing it." Ferguson v. Commonwealth, 212 Va. 745, 747, 187 S.E.2d 189, 191 (1972) (discussing a composite photograph produced by a Regiscope camera "showing the person who presents the check, the identification presented by that person and the check which is cashed"). Or, as another court explaining the silent witness theory has stated, there must be "proof the photograph has not been altered in any significant respect" for it to be admissible. Buck v. State, 453 N.E.2d 993, 996 (Ind. 1983) (holding that certain photographs were admissible under the silent witness theory based in part on "uncontroverted evidence that the Polaroid photographs were not altered or retouched"); see also People v. Doggett, 188 P.2d 792, 795 (Cal. Ct. App. 1948) (holding that certain photographs were admissible based in part on "unimpeached expert testimony that the pictures themselves contain[ed] physical elements . . . which disclose[d] that they [were] not 'composite' or 'faked' photographs but [were] genuine photographs and 'contact prints' made from 'straight photograph' negatives"); People v. Byrnes, 308 N.E.2d 435, 437-38 (N.Y. 1974) (holding that certain photographs were admissible under reasoning essentially identical to the

- 18 -

silent witness theory based in part on "testimony that the negatives from which the positive prints were made had been seized at the [location where the criminal acts depicted in the photographs were alleged to have occurred]" and on "unimpeached testimony by a photographic expert that the negatives had not been altered in any manner and that the prints produced therefrom were accurate reproductions").

Here, there was simply no evidence regarding either the origin of this photograph or the process used to produce it, and the Commonwealth offered no proof whatsoever that the photograph had not been altered or tampered with. While Detective Gainer identified the person shown in the photograph as Rushing, the Commonwealth presented no evidence showing where or how (or even whether) the police obtained the original images, or when and under what circumstances the photocopy exhibit was created. Detective Gainer disclaimed any prior knowledge of the exhibit, and the Commonwealth failed to ask any other witness about its origin or authenticity. Simply put, there was no "evidence of extrinsic circumstances [showing] that the photograph [was] authentic." Charles E. Friend, The Law of Evidence in Virginia § 13-12(a), at 539 (6th ed. 2003). In the complete absence of any such evidence providing a foundation for admitting this photograph as a silent witness, I believe the trial court erred in admitting it into evidence. Accordingly, I would reverse Rushing's conviction and remand for a new trial.