**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted February 23, 2015[*]
Decided February 27, 2015

**Before**

DIANE P. WOOD, *Chief Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 14-1693

| | |
|---|---|
| MICHAEL A. SANDERS, <br>    *Plaintiff-Appellant,* | Appeal from the United States District Court for the Central District of Illinois. |
| *v.* | No. 12-3358 |
| ILLINOIS DEPARTMENT OF CENTRAL MANAGEMENT SERVICES, <br>    *Defendant-Appellee.* | Richard Mills, <br> *Judge.* |

**O R D E R**

Michael Sanders has litigated frequently against his Illinois state employers. In this latest round, he appeals from the dismissal of his employment-retaliation complaint under the Americans with Disabilities Act, *see* 42 U.S.C. §§ 12101– 12213, against the Illinois Department of Central Management Services. We conclude that Sanders waived his appellate arguments, and, in any event, the complaint is claim-precluded in part and the remainder does not state a claim for relief. Thus, we affirm.

---

[*] After examining the briefs and record, we have concluded that oral argument is unnecessary. Thus the appeal is submitted on the briefs and record. *See* FED. R. APP. P. 34(a)(2)(C).

For this appeal we assume the truth of the facts alleged in Sanders's complaint as well as any consistent elaboration of those facts in his appellate brief. *See Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 555 (7th Cir. 2012). The Department hired Sanders as a data-processing technician in 2005, but soon placed him on paid administrative leave after he said he was "going to get" his supervisor. While still on leave two years later, in 2007, the Department fired him for refusing to participate in psychiatric evaluations to determine whether he was fit for work. Sanders appealed the discharge and persuaded the Illinois Civil Service Commission that under state law the Department lacked "good cause" to fire him. Affirming that ruling, a state court ordered him reinstated.

After his victory in state court, the Department told Sanders to report back to work on March 2, 2009, but his return was soon delayed. A week before his return in March, Sanders called the Department to ask about his new worksite. During the call, he said that there would "probably be fireworks" when he returned. Interpreting the call as a bomb threat, the Department placed Sanders on paid administrative leave the next day and reported the threat to the police. The police cleared the worksite but eventually decided that no real threat had occurred. Sanders believes that the Department deliberately misinterpreted his "fireworks" warning to retaliate against him for his state-court victory. According to him, before that victory Department employees had been discussing ways that they could get Sanders fired if he won that case.

Sanders finally reported to work in June 2009—his first time back since he was placed on paid administrative leave in September 2005— but he soon faced new problems. On the day that he returned, the Department initiated disciplinary proceedings against him, which led to a three-day suspension. The next week he was docked an additional day's pay. Sanders also learned that the Department had not granted him paid sick, personal, and vacation days that were supposed to have been accumulating while he was on paid administrative leave.

After returning to work, Sanders began more litigation against the Department. In August 2009, Sanders sued it in federal court under the Americans with Disabilities Act for its conduct during his leave—he contested its decision to require him to take a psychiatric exam in 2007. A jury eventually found for the Department, and we affirmed. *Sanders v. Ill. Dep't of Cent. Mgmt. Servs.*, 530 F. App'x 593 (7th Cir. 2013). Then, in October 2009, Sanders filed a charge of discrimination with the Illinois Department of Human Rights, asserting the claims that he raises here: After he returned from leave, the Department allegedly retaliated against him for his state-court victory by falsely accusing him of making a bomb threat, wrongly suspending him for three days, and

incorrectly docking his pay for one day. He adds that, during his leave, the Department had also improperly withheld benefits that had accrued then. After pursuing his administrative remedies, Sanders brought this suit, reiterating his claims that the Department violated the ADA by retaliating against him for his state-court success.

The Department moved to dismiss the complaint, and the district court granted its motion. The court concluded that, because Sanders could have raised his dispute over the withheld benefits in his first federal lawsuit, that claim is precluded. The court also ruled that Sanders failed to state a claim that, by interpreting the "fireworks" comment as a bomb threat, suspending him for three days, and docking his pay for one day, the Department violated the anti-retaliation provisions of the ADA.

On appeal Sanders contests the district court's ruling that claim preclusion bars his claim that the Department withheld benefits during his leave in order to retaliate for his success in state court. Although the district court used the wrong legal test (it should have applied federal, not Illinois, law of preclusion, *see Cannon v. Burge,* 752 F.3d 1079, 1101 (7th Cir. 2014), because the first suit was federal) the conclusion is the same under the correct analysis. Of the three elements of claim preclusion—(1) identity of parties; (2) identity of claims; and (3) final judgment on the merits in the first suit, *Adams v. City of Indianapolis,* 742 F.3d 720, 736 (7th Cir. 2014)—only the second is at issue here. Sanders contends that he could not have brought in his first federal suit his current claim that the Department wrongly withheld benefits while on leave; he asserts that he did not learn about the withholding until his return in 2009. But he did not file his first lawsuit until after he had returned from leave in August 2009; thus he did know about the claim when he first sued. And both his claim about the withheld benefits and his earlier federal suit concern the Department's actions during his leave. So he could and should have included his current claim in his first federal case. True, the defendants might have asserted as an affirmative defense that Sanders needed to present his current claim first to the EEOC. But rather than split claims about the Department's actions during his leave into two suits, Sanders could have asked the district court to stay the first suit until he received a right-to-sue letter from the EEOC. *See Palka v. City of Chicago,* 662 F.3d 428, 438 (7th Cir. 2011); *Czarniecki v. City of Chicago,* 633 F.3d 545, 550 (7th Cir. 2011); *Herrmann v. Cencom Cable Assocs., Inc.,* 999 F.2d 223, 225 (7th Cir. 1993).

Sanders' withheld-benefits claim also founders for the same reason that his remaining appellate claims—contesting the district court's conclusion that his complaint fails to state a claim for relief—also fail: Sanders forfeited his arguments because he did not contest in the district court the Department's motion to dismiss. Sanders did submit

a filing that opposed the Department's motion to dismiss, though he titled it a "request for a pretrial hearing." And we look at the substance in his filings in the district court rather than their captions, especially because Sanders is proceeding pro se. *See, e.g., Castro v. United States,* 540 U.S. 375, 381–82 (2003); *United States v. Lloyd,* 398 F.3d 978, 979 (7th Cir. 2005); *Gleash v. Yuswak,* 308 F.3d 758, 761 (7th Cir. 2002). The problem for Sanders is that he developed no arguments in that filing, and he cannot do so now for the first time. *See Jarrard v. CDI Telecomm., Inc.,* 408 F.3d 905, 916 (7th Cir. 2005).

But even if Sanders had not waived his appellate arguments, we would still conclude that Sanders fails to state a retaliation claim under the ADA regarding the bomb-threat accusation, three-day suspension, and docked pay. To state a claim for retaliation, Sanders was required to allege that the Department subjected him to an adverse employment action because he engaged in *protected* activity. *See Carlson v. CSX Trans., Inc.,* 758 F.3d 819, 828 (7th Cir. 2014); *Luevano v. Wal-Mart Stores, Inc.,* 722 F.3d 1014, 1028–29 (7th Cir. 2013). Protected activity occurs when a person "has opposed any act or practice" that the ADA prohibits or "made a charge" or "participated" in an ADA case. 42 U.S.C. § 12203; *Kersting v. Wal-Mart Stores, Inc.,* 250 F.3d 1109, 1117 (7th Cir. 2001); *Rorrer v. City of Stow,* 743 F.3d 1025, 1046 (6th Cir. 2014).

Sanders has not asserted that the Department took these actions against him because he invoked his rights under the ADA. To the contrary, he contends that the Department took these actions because he protested in state court the Department's decision to fire him 2007. But his state-court protest, as we have previously observed, raised a claim that the Department violated a state administrative regulation requiring good cause before discharge. *See Sanders v. Ill. Dep't of Healthcare and Family Servs.,* 2014 WL 6439686, at *2 (7th Cir. Nov. 18, 2014); *Sanders,* 530 F. App'x at 594. And Sanders has not told us in any of his filings in this court and the district court that he raised any other claims. Because Sanders has never alleged that in the state proceedings he protested *discrimination,* that litigation was not ADA-protected activity. *See Kodl v. Bd. of Educ. Sch. Dist. 45, Villa Park,* 490 F.3d 558, 562–63 (7th Cir. 2007) (concluding that employee's grievances to union, when unrelated to discrimination, are not protected activity); *Laughlin v. Metro. Washington Airports Auth.,* 149 F.3d 253, 259 (4th Cir. 1998) (emphasizing that complaints serving as basis for retaliation claim—regardless of form or forum—must protest unlawful discrimination). Thus, the Department's alleged response to the state-court victory does not violate the ADA's anti-retaliation protections.

Accordingly, we AFFIRM the district court's judgment.